*Litchfield,*
June, 1838.

Baldwin
*v.*
Porter.

| 12 | 473 |
| 72 | 510 |
| 72 | 515 |

| 12 | 473 |
| 74 | 23 |

BALDWIN and another *against* PORTER.

Where a testator, by his will, gave a certain share of his estate to his daughter, and appointed executors; and by a codicil of the same date, directed, that such share should be placed in the hands of his executors, as trustees, for the support of his daughter and her family; it was held, that the probate of the will by the executors, and their acceptance of the office of executor and giving bond, furnished sufficient presumptive evidence, in the absence of proof to the contrary, that they also accepted the special trust under the codicil.

Where such executors had exercised the powers and performed the duties of trustees; it was held, that these acts furnished evidence of their acceptance of the trust.

Where the husband of such *cestuy que trust*, by his own labour and at his own expense, cut logs on the trust estate; and it appeared, that such interference was only in the character of husband and parent, was consistent with the purposes of the trust, was such as would render the property available for those purposes, and was with the consent of the trustees,— there being no fraud, and creditors not being deceived;—it was held, that such acts of the husband did not render the property liable to his debts, nor create such an interest in him therein as could be taken by execution.

A creditor of the husband having taken such property by execution and sold it at the post, the husband bid it off, for the trustees, paying less for it than its value; in an action of trover, brought by the trustees, against the creditor, it was held, that proof of this fact was admissible in mitigation of damages; the real damage sustained, which was the sum paid, at the post, for the restoration of the property, furnishing the rule of damages in the case.

But where such evidence was, on the trial, erroneously rejected, and the plaintiff obtained a verdict for the full value of the property; it was held, that a new trial would be granted only on condition that the plaintiff should refuse to remit the excess of damages over the sum so paid for the restoration of the property.

THIS was an action of trover for saw-mill logs; tried at *Litchfield, February* term, 1838, before *Church,* J.

The logs in question were taken and sold, by the defendant, as constable, on an execution in favour of *M. & E. Lyman* against *Birdsey Baldwin,* as his property; and it was admitted, that if the property of the logs was in him, the plaintiffs ought not to recover.

These logs grew upon a certain piece of land, formerly the property of *Daniel Baldwin,* deceased, which, under his last will and testament, had been distributed to *Lucia Baldwin,* his daughter, and the wife of *Birdsey Baldwin;* and they had been cut and carried away from this land to a saw-mill in

the vicinity, by *Birdsey Baldwin;* where they were taken and sold, by the defendant, on the execution.

The plaintiffs claimed title to the logs, as trustees of *Lucia Baldwin* and her children, by virtue of the will of her father. By this will, dated the 27th of *September*, 1819, he gave to each of his three sons two ninth parts, and to each of his three daughters one ninth part, of his estate ; and appointed his two sons, *Collins* and *Erastus Baldwin*, his executors.   He also made a codicil, bearing the same date, as follows : " My within-mentioned daughter *Lucia*, now the wife of *Birdsey Baldwin*, being in reduced circumstances, and her husband much in debt ; therefore, my will is, that whatever portion she may receive out of my estate shall be lodged in the hands of my executors, *Erastus* and *Collins Baldwin*, as trustees, and by them, together with the proceeds thereof, be dealt out, for the support of herself and her family, as they may need ; and at the decease of my said daughter *Lucia*, if any part of the property, either real or personal, should remain on hand, my will is, that it should go to her children, to be equally divided among them."

The plaintiffs claimed, that they had accepted the trust under the will and codicil ; and in proof thereof, they introduced these documents, together with a record of the court of probate, proving and approving them ; by which it appeared, that the plaintiffs, on the 11th of *January*, 1830, appeared before said court, and accepted the trust of executors of said will, and, together with their surety, gave bonds for the due discharge of said trust of executors.   The plaintiffs also claimed to have proved, that on various occasions, they had performed acts as trustees of *Lucia Baldwin*, and in the exercise of that trust. The defendant denied, that the plaintiffs had ever accepted the trust, or had done any acts as trustees ; and claimed, that the court should charge the jury, that said will and codicil and record of the court of probate, furnished no proof of their acceptance.

The defendant did not claim the existence of any fraud ; but claimed to have proved, that *Birdsey Baldwin* had frequently before cut logs from said land, and transported them to the saw-mill, and conducted himself, in the cutting and disposition of the timber growing on said land, as the owner thereof ; and that he cut the logs in question upon said land and trans-

ported them to the saw-mill, and had them afterwards sawed into boards, and disposed of such boards for his own use and benefit; and in so doing, bestowed his own labour and money upon them; all of which was done with the knowledge of the plaintiffs. If these facts were proved, the defendant claimed, that the creditors in said execution had right to cause it to be levied upon said logs, as the property of *Birdsey Baldwin*, and that the court should so instruct the jury. The defendant also claimed, that if *Birdsey Baldwin* had expended his own money and bestowed his own labour upon the logs, in cutting and transporting them to the saw-mill, this would create an interest in them in said *Baldwin*, to the amount and value of such labour and money, which could be taken by execution, and that the court ought so to instruct the jury.

*Litchfield,*
June, 1838.

Baldwin
*v.*
Porter.

At the date of the will and codicil, *Birdsey Baldwin* was, and ever since has been, poor and insolvent; and when the logs were cut, as well as before and since, his family consisted, besides himself, of said *Lucia*, his wife, and five children.

The plaintiffs claimed to have proved, that *Birdsey Baldwin* cut not only the logs in question, but all other logs and timber which he had ever cut on said land, and transported them to the saw-mill, for the sole use and benefit, and for the support, of his wife and children; and that the boards made from any logs cut by him from said land, and all other avails of the timber, were disposed of, to defray the expenses of the cutting, transporting and sawing, and for the purchase of articles necessary for the support of his wife and children; and all with the consent and approbation of the plaintiffs as trustees. The plaintiffs further claimed to have proved, that the execution creditors, when they caused the execution to be levied, and when the logs were sold, knew that the plaintiffs were trustees and claimed the logs in that capacity.

The court, refusing to charge the jury as claimed by the defendant, instructed them as follows: 1. That by the will of *Daniel Baldwin,* the plaintiffs were constituted trustees of the estate devised by him to his daughter *Lucia;* and upon their acceptance of this trust, the legal title vested in them. 2. That the record of the court of probate, shewing that the plaintiffs appeared before that court and accepted the office of executors, in the absence of any proof to the contrary, might and ought to be considered sufficient presumptive evidence

*Litchfield,*
*June, 1838.*

Baldwin
*v.*
Porter.

that they also accepted the special trust committed to them by the same will. So also, if they exercised any of the powers, or performed any of the duties, of trustees, this would furnish evidence of an acceptance on their part. 3. That if from the evidence the jury believed, that the plaintiffs, by their own conduct, knowingly permitted *Birdsey Baldwin* to manage this property in a manner inconsistent with the object and purposes of the trust, and to hold himself out to the world as the absolute owner thereof, so that thereby these creditors were deceived, and levied upon it verily believing it to be his property, the plaintiffs ought not to recover. But if the jury believed, as the plaintiffs claimed, that *Birdsey Baldwin's* interference with the logs in question, was only in the character of husband and parent, and was consistent with the purposes of the trust, and such as would render the property available for the necessary support of his wife and children ; and that it was with the consent or approbation of the trustees ; such conduct and interference ought not to prevent a recovery by the plaintiffs ; and in such case, the labour bestowed and the money expended, by said *Baldwin,* would not, as the defendant claimed, create such an interest in him in the logs as could be taken by execution.

The defendant, for the purpose of mitigating damages, offered evidence to prove, that *Birdsey Baldwin,* when the logs were sold, by the defendant, on the execution, procured an agent to bid them off for him, and that such agent bid them off at the price of 56 dollars, 70 cents, only, which was below their actual value. To the admission of this evidence the plaintiffs objected ; and the court excluded it.

The plaintiffs obtained a verdict ; and the defendant moved for a new trial for a misdirection and for the exclusion of legal evidence.

*T. Smith* and *Coffing,* in support of the motion, contended, 1. That an acceptance of the trust by the plaintiffs, could not be inferred from their acceptance of the office of executors. The duties of trustees and of executors are separate and distinct ; to be performed at different times, and upon different principles. For the proper discharge of their respective duties, executors are accountable to the court of probate, and trustees to a court of chancery. The probate bond is no security for

the *cestuy que trusts.* The trustees, in this case, were to take no beneficial interest in the property; but were merely to discharge a responsible duty, for the benefit of third persons. There was no room for a presumption of any kind, because there was no connection between the fact admitted and the fact disputed. 1 *Stark. Ev.* 494.

2. That the charge as to the rights of the creditors, growing out of the interference of *B. Baldwin* with the property, was incorrect. The court in effect, told the jury, that they could not give a verdict for the defendant, unless they found, first, that the trustees, by their own conduct, knowingly permitted *B. Baldwin* to manage the property, inconsistently with the trust; secondly, that these creditors were deceived thereby; and thirdly, that they levied on the logs verily believing them to be the property of *B. Baldwin.* The jury must have understood, that the concurrence of all these facts was necessary to enable them to render a verdict for the defendant. But this part of the charge, taking the clauses separately or collectively, is indefensible.

In the first place, if the plaintiffs permitted *B. Baldwin* to exhibit himself to the world, as the absolute owner of the property, it was immaterial whether they did so *intentionally,* or by sheer *negligence.* The injury to creditors, *viz.* the acquisition of a false credit by *B. Baldwin,* was precisely the same, in one case as in the other. If he was permitted to hold himself out to the world as the true owner of the property, through the *neglect* of the plaintiffs, the case is within the rule, that where one of two innocent persons must suffer, by the misconduct of a third person, the loss shall fall on that party who put it in the power of such third person to do the injury. Further; according to the charge, the creditors of *B. Baldwin* could not take the property for his debts, unless the plaintiffs not only intentionally, but by their *own conduct,*—importing some *overt act,*—permitted him to controul it.

Secondly, that part of the charge is incorrect, which requires, that the creditors must have been *deceived,* by the plaintiffs, in permitting *B. Baldwin* to hold himself out to the world, as the owner of the property, without pointing to the time when the creditors must have been so deceived, to render that fact material; whether, at the time their debt was contracted, or at the time the execution was levied.

*Litchfield,*
*June, 1838.*

Baldwin
*v.*
Porter.

Thirdly, that part of the charge is incorrect, which requires that these creditors should have *verily believed*, that the property belonged to *B. Baldwin*, at the levy of the execution. The belief of any particular creditor, at any time, especially when process is levied, is immaterial, in case the property is open to be taken by the creditors generally. If these creditors knew, when the execution was levied, that the logs in question belonged to the trust estate, they also knew that the trustees had permitted *B. Baldwin* so to manage with the property, that they were precluded from claiming it as their own ; that the policy of the law made their title void, as against *bona fide* creditors. *Swift* v. *Thompson,* 9 *Conn. Rep.* 63. 70. 72, 3.

Fourthly, that part of the charge was incorrect, which says, that if *B. Baldwin's* interference was in the character of husband, if it was consistent with the purposes of the trust, and if it was adapted to render the property available for those purposes, and was with the consent of the trustees, the plaintiffs were entitled to recover. Whether the interference of *B. Baldwin* was consistent with the purposes of the trust, was a question of *law*, which should not have been referred to the jury. He had no right to interfere with the trust estate *at all*. The devisor provided, in express terms, that the estate should be lodged in the hands of trustees, to be dealt out by them, for the support of Mrs. *Baldwin* and her family. He intended that there should be no confusion of goods ; but that the trust property should be kept separate and distinct from that of *B. Baldwin*, and from all his concerns. An interference in his character of husband and parent, would mislead creditors, as much as in his individual character. There are no *indicia*, by which these two sorts of interference can be distinguished. If an interference is to be characterized, by its tendency to render the property available for the purposes of the trust, and when it has that tendency, is to be protected ; then in this case, the more *B. Baldwin* expended his own money on the property, the more he improved it in value by his labour, and the more he thus appeared to the world to be the owner, the less right his creditors would have to treat it as his. The *consent* of the plaintiffs to his interference, so far from its being a fact in favour of the plaintiffs, is a strong fact against them.

The charge should have been thus : If you find that *B.*

*Baldwin* was permitted, either by negligence or design, to interfere with the property, and to hold himself out to the world as owner, so as *to gain a credit thereby, the* plaintiffs cannot recover: but that the plaintiffs might constitute *B. Baldwin* their agent; and if they caused him to appear to the world in that character, so that he gained no credit from the possession of the property, they could recover.

3. That the evidence offered in mitigation of damages, should have been received. *B. Baldwin* had this property in his hands, to administer it according to the trust, by consent of the plaintiffs. It has been taken from him, and he has got it back, Every thing is *in statu quo*, except the payment of 56 dollars, 70 cents. The case is the same as though the plaintiffs had bid off the property and applied it in fulfilment of the trust. The *actual* injury is measured precisely, by the sum which they have been obliged to pay, to get the property back. Have they sustained any other *legal* injury? In trover, the defendant may in all cases shew, in mitigation of damages, that the property has been restored.

*Miner* and *Church*, contra, contended, 1. That the plaintiffs' acceptance of the office of executors under the will, without declining the additional trust created by the same instrument, was a fact from which the jury might infer the acceptance of such additional trust. And here, the question is not, whether the *law* will presume the latter fact from the former; nor whether the evidence was *sufficient* of itself to prove the fact in controversy; but simply whether it was proper to go to the jury. Higher ground might be taken, if necessary. This is but the common case of a special power given to an executor by will; and if he accepts the office of executor, he *of course* accepts the special trust, unless he expressly renounces it. *Mucklow* v. *Fuller*, *Jacob* 198.

2. That the charge in relation to *B. Baldwin's* management of the trust property, was unexceptionable. It was left to the jury to say from the whole evidence, whether his management was consistent with the purposes of the trust; and whether he had held himself out to the world as the absolute owner of the property, and thereby gained a false credit, so that these creditors were deceived. All these matters the jury have passed upon, and found against the claim of the defend-

*Litchfield,*
June, 1838.

Baldwin
*v.*
Porter.

ant.   Upon this record, there is not only no fraud, but nothing from which fraud could be inferred.

Further; no question of fraudulent conveyance could arise in this case.   Here has been no transfer, and no relation of seller and buyer.   A creditor of *A* cannot take the property of *B* in *A's* hands, where there has been no sale, real or pretended, and no participation by the owner in any fraud.

3.   That *B. Baldwin* had no *interest* in these logs, by virtue of his labour upon them, which he could enforce against any body.   What he did, he did *gratuitously*—influenced, no doubt, by his relation to the *cestuy que trusts*.   [The court stopped the senior counsel on these points.]

4.   That the evidence offered in mitigation of damages, was properly rejected.   A person who has taken property wrongfully, is generally liable, in trover, for the value of the property.   Where it is restored, and the owner accepts it, this may be shewn in mitigation of damages ; but this is on the ground of *agreement.*   In this case, there has been no such agreement, and no room for any.   When property is taken and sold at the post, the person from whom it was taken has as good a right as any one else to bid upon it, and if the highest bidder, to take it.   It makes no difference to the owner or to any one else, to whom the property is sold.   Nor is the auction price the measure of damages in a subsequent action.   It is not even evidence in the case.   But here, the plaintiffs were not the purchasers of the property.   They are strangers to the transaction.   *B. Baldwin* had nothing to do with them.   He bought it *on his own hook;* and did what he pleased with it.

CHURCH, J.   The defendant, at the trial, insisted, that this action could not be maintained, because there was, as he said, no proof that the plaintiffs had ever accepted the trust under which they now assume to act and prosecute this suit.   But the court instructed the jury, that proof of such acceptance was furnished, and might be presumed by the jury from the fact that the plaintiffs had, before the court of probate, accepted the executorship of the will of *Daniel Baldwin,* the testator, without renouncing or declining the trust created for the benefit of *Lucia Baldwin* and her family ; to prove which the record of the probate of said will was offered and admitted.

*Litchfield,*
June, 1837.

Baldwin
*v.*
Porter.

The defendant ought not to complain of the charge, in this respect; for it was most favourable to himself. Instead of submitting the question of acceptance to the jury, as a matter of fact, the judge at the trial would have been warranted in considering it a question of law; and of saying, that the law would imply the assent of the plaintiffs to this trust, and their acceptance of it, in the absence of proof of a renunciation by them. *Matthews* on *Pres. Ev.* 32. *Halsey* v. *Whitney*, 4 *Mason*, 206. *Brooks* v. *Marbury*, 11 *Wheaton*, 78. *Lippincott* & al. v. *Barker*, 2 *Binn.* 174. *McAllister* v. *Marshall*, 6 *Binn.* 338. *Hastings* v. *Baldwin*, 17 *Mass. Rep.* 552. *Nichol* v. *Mumford*, 4 *Johns. Ch. Rep.* 529. *Shepherd* v. *McEvers*, 4 *Johns. Ch. Rep.* 126. *Thompson* v. *Leach*, 2 *Salk.* 618. *Townson* v. *Tickel*, 3 *Barn. & Ald.* 31.

But the acceptance of the office of executors, without any intimation of an unwillingness to perform the whole duty imposed by the will, very rationally, as a matter of fact, afforded a presumption from which the jury might infer, that the plaintiffs had accepted the trust in question. It was certainly to be expected, that persons to whom the testator had confided the trust of executing his will, and who, by accepting the office of executors, had engaged to do so, would provide for the execution of this trust, by others, if they did not intend to discharge it themselves.

It is true, as the defendants claimed, that the trust created for the benefit of *Lucia Baldwin* and her family, was distinct from the ordinary duties of executors, and perhaps might have been declined, without an entire renunciation of executorship; yet this furnishes no answer to this argument of presumption. Nothing is more frequent than that special powers and directions are given by will to executors, which the law of itself would not throw upon them; such as a power to sell lands for other purposes than to pay debts, &c.; and yet we do not think, that an instance can be found of any other evidence of the acceptance of such collateral trust, than such as the general acceptance of the executorship affords. The principle of the charge in this particular is very distinctly recognized in the case of *Mucklow* v. *Fuller, Jacob* 198. (4 *Eng. Cond. Ch. Rep.* 93.)

2. The defendant in effect claimed, that the court should charge the jury, that if *Birdsey Baldwin,* Esq., the husband

*Litchfield,*
*June, 1838.*

Baldwin
*v.*
Porter.

of *Lucia Baldwin*, and the father of her children, was permitted, by the plaintiffs, to have possession of the trust estate, to manage it as he would have done irrespectively of any trust, for the support of his wife and children; the trust property would thereby be rendered subject to his debts; and that the trustees would thereby be estopped from denying the right of his creditors to take and sell it on execution; whether there was any actual fraud in the transaction or not; or whether the levying creditors were in the least deceived or misled, by this conduct of *Birdsey Baldwin*, or not. This claim of the defendant cannot be supported. We know of no principle which gives countenance to it. Whether trustees, by any conduct of their own, can subject the trust estate to attachment for their private debts, without any fault, negligence or consent, on the part of the *cestuy que trusts*, we need not anticipate. But we hazard nothing in saying, that a court of equity, in such case, would interfere to protect the rights of *cestuy que trusts* against any such attempts. *Moses* v. *Murgatroyd*, 1 *Johns. Ch. Rep.* 119. *Shepherd* v. *McEvers*, 4 *Johns. Ch. Rep.* 136.

It is a general principle, that no man can sell property or transfer title to that which he does not own; nor can one man's property, without his consent, be rendered subject to the demands of another. To this rule there are exceptions; but they are such as become necessary to protect innocent persons against fraud; else they are founded upon matter of policy, which does not exist in the present case. Therefore, it has been holden, that if the owner of goods voluntarily permit another to hold himself out to the world as being the true owner, and for this purpose, entrust him with the exclusive possession or other *indicia* of title, under circumstances which would naturally tend to mislead, he shall be concluded by the sale of it to an innocent and mistaken purchaser. *Pickering* v. *Busk* & al. 15 *East* 41. *Dyer* v. *Pearson*, 3 *Barn. & Cres.* 38. So again, if one who is owner, or has a lien or incumbrance upon property, stands silently by, and sees one who has no title or an imperfect one, transfer it to another, he shall be precluded afterwards from reclaiming it. *Rob. on Frauds*, 30. But all these cases proceed upon the ground that the owner has deliberately assumed a false position, and a character inconsistent with that of owner, which, if changed, would

*Litchfield,*
June, 1838.

Baldwin
*v.*
Porter.

result in fraud and damage.   And therefore, upon principles of clear justice, a *bona fide* purchaser, in such cases, should be protected.    But to cases, like the present, where there has been no fraud, nor misapprehension of the real state of the title, this principle can have no application.   A contrary doctrine, and such as is claimed by the defendant, would lead to practical consequences which could not be endured.   Every borrower or bailee for hire, uses the thing bailed, in many respects, as his own ; and his conduct, to some extent, furnishes a false index of property ; but yet, the legal powers and duties of bailee being entirely consistent with the true position and character of the owner, the rights of the bailor will be protected against the abuse of the bailee's powers, though he were to sell the property bailed to a *bona fide* purchaser.

Nor do the principles of law applicable to fraudulent sales, have any place here, and thus render the property subject to all creditors, whether actually deceived or not.   Here has been no sale ; no retained possession by a vendor ; and nothing inconsistent with the real truth of the case.

If these are correct views, then it is clear, that the judge at the circuit was not only justified in refusing the charge demanded, but was entirely correct in the charge given.

It should be recollected, that if *Birdsey Baldwin*, in right of his wife, had not strictly an interest in this fund, yet as a parent and natural guardian of his children, it was at least his natural, if not his legal duty to render it, with least expense, productive and available for the purposes of its appropriation. His duty of husband and parent still remained perfect, although provision had been made by another, for the partial support and maintainance of his wife and children.   An objection to the principles of the charge involves in it a claim that these conjugal and parental duties could not be discharged, without subjecting the fund to the claims of the creditors of the husband, and thus rendering an act honestly intended to carry into effect the objects of the fund, the means of its destruction.

3. Another claim of the defendant we consider equally unfounded : That the labour and services of *B. Baldwin*, in cutting the timber and converting it into saw-logs, imparted to him a specific right or title in the logs themselves, to the amount of the value of such labour, &c., which could be taken on execution against him.   We know of no such manner

of acquiring title to personal property. There was no confusion of goods. *Baldwin* had no goods to intermingle with these; and if he had, the nature of the property was such, that it could be easily distinguished, and thus there could be no confusion of goods.

Nor was any title acquired by accession. Such title, when acquired, is exclusive, and never gives a right in common with the original owner, as in the case of confusion of goods. Besides, the identity of the property was not changed. The labour and services of *B. Baldwin* were in aid of the trust estate, and not adverse to it; and it would indeed be strange, if labour thus bestowed should ensue to the exclusive benefit of the operator, and confer upon him a title. 2 *Kent's Com.* 293. *Betts* & al. v. *Lee,* 5 *Johns. Rep.* 348. *Rightmyer* v. *Raymond* & al. 12 *Wend.* 51.

4. A question of more difficulty, in the settlement of the rule of damages in this case, is presented. The property in dispute was logs, which the defendant, as constable, took and sold on execution against *Birdsey Baldwin.* At the public sale of the logs, *Baldwin,* and as the defendant claimed, in behalf of the present plaintiffs, bid them off, and became purchaser for the sum of 56 dollars, 70 cents, only; which, as the jury have found, was considerably less than their real value. And this the defendant offered to prove in mitigation of damages; and the evidence was rejected, by the court. And now, whether the value of the property, or the amount paid to bid it in, by the plaintiffs, or on their behalf, constitutes the rule of damages, is the question.

The evidence was rejected, in the court below, upon the authority of the case of *Potter* v. *Dickinson,* stated at the bar to have been decided, some years ago, in the superior court, wherein the same question was made. This question is not clear of doubt : judicial opinions, which have been expressed in cases somewhat analogous, have not been uniform.

That the value of the property converted is the general rule of damages, in an action of trover, is admitted. To this rule there are exceptions. And both the rule and the exceptions, proceed upon the principle that the plaintiff ought to recover as much, and no more damages, than he has actually sustained ; which commonly is the value of the property ; and hence the general rule. No good reason, consistently with moral

principle, can be suggested, why greater damages should ever be recovered, than have in truth been sustained, except in those cases where the law permits, by way of punitive justice, the recovery of vindictive damages. Such damages are never recoverable in the action of trover. On this principle, if after conversion, the property be restored before suit, damages for the detention only can be recovered. And so, if an executor prosecute an action of trover, the defendant may show in mitigation, that he has paid debts due from the deceased. *White-hall* v. *Squire, Carthew* 104. 2 *Phil. Ev.* 125. And for the same purpose, the defendant may show, on the general issue, that the plaintiff was only part owner of the chattel converted. *Bloxam* v. *Hubbard,* 5 *East,* 420. And on the same principle of indemnity for actual loss, the plaintiff has been permitted to recover the enhanced value of the converted chattel. *Fisher* v. *Prince,* 3 *Burr.* 1363. *Whitton* v. *Fuller,* 2 *Bla. Rep.* 902.

In actions of trespass *de bonis asportatis,* which are concurrent with actions of trover, the value of the property converted is not certainly the rule of damages, because in these actions vindictive damages may sometimes be given ; but the value of the property is always an essential enquiry, and so far furnishes a rule, that the damages may not generally fall below it. And therefore, so far as the present question is involved, the course of judicial decisions on this point, in these actions, may furnish authority. In the case of *Brace* v. *Head,* 3 *Dana, (Ken. Rep.)* 491., which was an action of trespass *de bonis asportatis* for goods illegally sold on execution, it was holden, that if the avails of the sale went to the plaintiff's benefit, this would operate to mitigate damages. The case of *Baker* & al. v. *Freeman,* 9 *Wend.* 36. in its circumstances, was essentially the present case. Personal chattels had been sold under an illegal school district warrant; and the agent of the owner bid off the property at the sale, for the benefit of his principal ; and it was holden, that the amount paid and the interest, furnished the rule of damages. That case differs from this only in the form of the action, which was trespass *de bonis asportatis.* The same principle was recognized, by the same court, in the case of *Clark* v. *Hallock,* 16 *Wend.* 607.

In the present case, it is very evident, that the real damage

sustained by the plaintiffs, was the sum paid at the sale; by which the logs were restored to the possession of the plaintiffs, and were appropriated, as the motion states, for the benefit of Mrs. *Baldwin* and her children. And the real state of the case is, that the defendant took the logs in question under colour of legal process, and in the course of his proceedings, the plaintiffs have been illegally subjected to a loss of 56 dollars, 70 cents, and no more. This sum, and the interest upon it, will indemnify them for the loss sustained; and this, and no more, they ought to recover.

We think a contrary doctrine, in cases like this, would, in most cases, work great injustice. A claimant of goods taken on execution for the debt of another, generally attends at the place of sale, makes known his claim and forbids the sale. Purchasers dare not, under such circumstances, interfere, or at least are unwilling to do so, at any hazard, and cannot be induced to offer the real value for any such disputed article. The owner, therefore, by his own act, would be enabled to regain possession of his property, for a sum merely nominal. It would be an affront to the principles of justice to say, that after having thus obtained his property, the owner should, in addition, recover its full value in money.

Notwithstanding this is our opinion, and we believe, that the evidence which the defendant offered in mitigation of damages, should have been received; yet we do not think, that a new trial ought to be unconditionally granted. The plaintiffs, by remitting from the amount of the verdict recovered, all above the sum of 56 dollars, 70 cents, and the interest, can place the defendant in the same situation where a new trial ought to place him, and without its expense and delay. Our advice, therefore, will be, that for the rejection of the evidence offered in mitigation, a new trial be granted, unless the plaintiffs will remit on the record, so much of the sum found by the jury, as damages, as will leave due to the plaintiffs the aforesaid sum of 56 dollars, 70 cents, and the interest thereon. *Evertson* v. *Sawyer*, 2 *Wend.* 507. *Smith* v. *Brush*, 11 *Conn. Rep.* 359.

In this opinion the other Judges concurred.

New trial to be granted *nisi*.