## McInroy *et al. versus* Dyer.

*Vendor, when a competent witness for vendee.— Withdrawal of testimony, when to be applied for.—Measure of damages in trespass for judicial sale of personal property, when plaintiff is the purchaser.*

1. A vendor of a saw-mill improvement erected by him on leased land, by assignment and quit-claim conveyance endorsed on the lease, without warranty, is a competent witness in an action brought by the vendee against a constable for levying on and selling a portion of the machinery, on an execution against the former owners : for if the articles sold were fixtures they passed by the assignment, without warranty : if detached and personalty they were not embraced in the assignment, and there was no implied warranty.

2. After the testimony of a witness has been received without objection on the part of the defendant, and used and commented on by him to the jury, he cannot afterwards ask its withdrawal from the jury, as the case is about to be given them by the court.

3. Where there was evidence that the property sold by the constable was bought in for the plaintiff : *held,* that the value of the articles with interest was not the true measure of damages ; that the evidence should have been referred to the jury, with instructions that if bought for the plaintiff and the possession had remained undisturbed, the measure of damages was the sum bid at the sale with the interest thereon.

ERROR to the Common Pleas of *Tioga county.*

This was an action of *trespass vi et armis*, brought by George B. Dyer against Hugh McInroy and R. S. Bailey, to recover damages from defendants for taking and carrying away certain mill machinery which plaintiff alleged belonged to him, consisting of carriage blocks and mill-dogs, pitmen and pitman irons, fender-posts and rods, saw-gate, and rag-wheel. This machinery was levied on by R. S. Bailey as constable, April 25th 1859, by virtue of an execution issued upon a judgment in favour of B. T. Vanhorn for the use of Hugh McInroy, against Jennings & Barnes, and was sold on the 7th of May 1859, to David L. Aiken for $53. Plaintiff claimed title to said machinery under the following state of facts : On the 22d of July 1854, Edward McInroy leased to Nelson Jennings 2½ acres of land in Charleston township, as per lease of that date given in evidence. On this lot of land a steam saw-mill was erected. Its erection was commenced in 1854 by Nelson Jennings and George Kress. Kress sold his interest in the premises to Lemuel Barnes, and on the 29th day of May 1855, Nelson Jennings assigned to said Barnes an undivided half of said lease, and of all the mills, buildings, and improvements on the land described in said lease. On the same day Jennings & Barnes sold and conveyed the demised premises, including mills, buildings, and improvements, to G. B. Dyer. The conveyance did not in terms include any personal property. The machinery in controversy was, at one time,

a part of the steam saw-mill on this lot. Lemuel Barnes testified that they built the mill with an English gate, but finding that they could not do the business with it they designed, they put in a circular saw; that when they put in the circular, they left the saw-gate of the English mill hanging in the mill, the carriage rolled back, and the rag-wheel in its place, in. order that they might use the English gate when anything was wrong with the circular; that this machinery remained in this condition until the month of December following the assignment to Dyer, when William Updike went into possession of the premises under Dyer, took out the saw-gate, laid the carriage-plates over head, and removed the rag-shaft, saw-gate, carriage-blocks, pitman, tighteners, and some other machinery to the blacksmith shop, some six or eight rods from the mill. The evidence of Edward Mc-Inroy contradicted that of Barnes. He testified that the machinery was removed before the sale to Dyer, and that it was in the blacksmith shop when Mr. Terwillager came and took possession under Dyer. There was no other evidence of a sale of this property to Dyer, except the assignment. As matter of defence it was also urged, that the possession of this property was never changed; that it always was upon those premises until it was levied on and sold, and that if the possession was changed it did not continue, but reverted to Barnes, who was on the premises when the levy was made. The evidence showed a conveyance of the rights of Jennings & Barnes in the premises to plaintiff, dated May 29th 1855, for the consideration of $5000; and that the plaintiff took possession soon after the date of the conveyance, and remained in possession till he sold it to J. B. Wilson in March 1857 or 1858. During that time Jennings & Barnes had no possession, and were seldom there. Updike's occupancy continued about twenty-one months. After Updike's occupancy terminated the mill was locked up, and the key delivered to Mr. Maynard, the agent of Dyer, at Corning. After the sale to Wilson, Barnes came back to the premises, in the capacity of an agent or employee of Wilson. When McInroy directed the constable to levy on it, Barnes informed him that it was the property of Dyer, and not of Jennings & Barnes.

The court below instructed the jury that the main question in the cause was, in whom was the ownership of the machinery vested at the time of its seizure by the constable; and, after stating the facts of the case, submitted this point to the jury.

The testimony of Lemuel Barnes, who had been sworn and examined without objection, had been assailed by some of defendant's witnesses, and the defendant's counsel in summing up asked the court to charge, that he was incompetent to testify for the reason that he was vendor of plaintiff, and to withdraw his testimony from their consideration, which was refused.

[M'Inroy *et al. v.* Dyer.]

The court instructed the jury that the measure of damages in this case was the value of the property in controversy at the time of its sale by the constable, with interest thereon from that date.

Under these instructions there was a verdict and judgment for plaintiff; whereupon the defendant sued out this writ, and assigned for error the refusal of the court below to withdraw the testimony of Lemuel Barnes, and the instruction of the court as to the measure of damages.

*Lowrey & Wilson,* for plaintiff in error.

*C. H. Seymore* and *H. W. Williams,* for defendant.

The opinion of the court was delivered, March 28th 1864, by

STRONG, J.—We do not perceive that the witness, Lemuel Barnes, had any interest such as to disqualify him from testifying in behalf of the plaintiff. If the property levied upon and sold under the execution against Barnes and Jennings, was a part of the realty on the 29th day of May 1855, when the assignment of the mills, buildings, and improvements was made to Dyer, clearly there was no warranty of title, and therefore no interest. If the articles levied upon had been detached before the assignment, and had become personalty, they were not embraced in the assignment, and in that case there was no implied warranty. In any aspect of the case, the interest of the witness is not apparent. But were it not so, it was too late to ask the court to withdraw his testimony from the jury, after it had been received without objection, used by the plaintiffs in error, and commented upon by them to the jury : Rees *v.* Livingston, 5 Wright 119.

The only important question in the case is, whether the court below applied a correct rule for the assessment of damages. It was an action of trespass against a constable and another for levying upon and selling the plaintiff's goods under an execution against Barnes and Jennings. The goods had been sold at the constable's sale, and there was some evidence they had been bought in for the plaintiff. The court instructed the jury that the measure of damages was not what had been paid at the constable's sale, but the value of the property at the time the sale was made, with interest thereon from that date. This was a correct enunciation of the rule, as applicable to ordinary cases of trespass *de bonis asportatis,* but it is applicable only to cases where the owner has not regained possession of the goods before the trial. If in this case, the property seized and sold by the constable was bought in by the plaintiff, or for him, at a price less than its value at the time of the seizure or the sale, that

value was not, in any just sense, a measure of the injury caused by the act of the constable.  What the law seeks to secure in an assessment of damages to an injured party is compensation.  He can ask no more than to be made whole.  In most instances a levy and sale of a plaintiff's goods for the debt of another deprives him entirely of the property, and nothing less than its value, therefore, would be compensation.  But if there has been a redelivery to him, or if he has reacquired it, he may be compensated with less.  He is then entitled to what it has cost him to regain possession, to what he has lost by the temporary deprivation of the use of the chattels, and to such other damages as are commensurate with the injury.  No other rule than this will do complete justice, and it is supported by authority.  In actions of trover it has often been held that though there was a complete conversion, and though the general rule is, the measure of damages is the value of the goods at the time of the conversion, or the highest value at any time between the conversion and the trial, yet if they have been regained by the plaintiff before the trial, that fact goes in mitigation of damages.  In such a case the value of the use of the goods, during the period in which the plaintiff was deprived of possession, with any injury to the property itself, and the expense of recovering it, have been declared to be full compensation.  In Cook *v.* Hartle, 8 Car. & Payne 570, a plaintiff was not allowed to recover the value of goods which had been converted to the use of the defendant and afterwards returned.  The same rule was held in Moon *v.* Raphael, 2 Bingh. N. C. 310.  In Baldwin *v.* Porter, 12 Conn. 473, which was trover for saw-logs, the defendant had seized in execution and sold as the property of Birdsay Baldwin, it was held, the fact that Baldwin had bid in the property at the sale for the plaintiffs, who were the true owners, was admissible in mitigation of damages; and the real damages were declared to be the sum paid at the sale.  The same doctrine was asserted in Curtis *v.* Ward, 20 Conn. 204, and in Massachusetts in Pierce *v.* Benjamin, 14 Pick. 361, and Greenfield Bank *v.* Leavitt, 17 Id. 161.  So also in New York, Reynolds *v.* Shuler, 5 Cowan 323, and in Ewing *v.* Blount, 20 Alabama 694, the principle was asserted in strong terms.

These were actions of trover, it is true, but there is no reason for a different rule in trespass.  In both, the general principle is that a plaintiff is entitled to such damages as he has actually sustained.  In both, the value of the property lost by the plaintiff is the general standard of measurement of damages, laying out of consideration what may be recovered in trespass for acts of outrage and oppression accompanying the taking.  What will make the plaintiff whole is the same in one form of action as in the other.  No distinction is recognised by the courts.  In Baker

[McInroy *et al. v.* Dyer.]

*v.* Freeman, 9 Wend. 36, it was decided that where the goods of a party had been sold under illegal process, and they had been bid off at the sale by an agent of the owner, who purchased for the benefit of his principal, and paid his bid with the money of the principal, the measure of damages in an action of *trespass* was the amount of the bid and interest, and not the value of the property sold. And in Brace *v.* Head, 3 Dana's (Ky.) Rep. 491, which was an action of trespass *de bonis asportatis*, for goods illegally sold on execution, it was holden that if the proceeds of the sale went to the plaintiff's benefit, this would operate to mitigate the damages. See also Clark *v.* Halleck, 16 Wend. 607.

Eby *v.* Schumacker, 5 Casey 40, cannot be regarded as asserting a contrary doctrine. There the goods had been seized while *in transitu* to the owner, as the property of a third person. An action of trespass was brought, and it was then agreed between the owner and attaching creditor that the property might be sold. But it was stipulated that the agreement should not, in any measure, affect the rights, or vary the position of any of the parties. The sale was accordingly made, and the plaintiff became the purchaser. The sale was made for the benefit of the attaching creditors, for the property was deteriorating in value by being kept in package. The case was peculiar, quite unlike the present in its circumstances; and it is not to be understood as a denial of the doctrine generally recognised, that in actions for damages for taking and carrying away, or for conversion of personal property, the rule that the value of the property at the time of the taking and sale, or of the conversion, is the measure of damages, applies *only* to cases where the property has not been regained by the owner before the trial.

This qualification of the general rule escaped the attention of the learned judge of the Common Pleas. The case should have been submitted to the jury to find whether the articles sold by the constable were bought in by the agent of the plaintiff on his account. If they were, and the actual possession of the plaintiff was never disturbed, the measure of damages was the sum bid at the sale, with interest, for that was the real extent of the injury the plaintiff had received.

The judgment is reversed, and a *venire de novo* awarded.

AGNEW, J., was absent at Nisi Prius when this case was argued.