# Pure Oil Company *v.* Terry, Appellant.

| 209 | 403 |
| 214 | 163 |

*Replevin—Bond—Retention of goods—Measure of damages—Damages.*

Where property replevied is permitted to remain in the full possession, enjoyment and use of the defendant until its sale by the plaintiff, when most of it is purchased by the defendant, and thereafter the replevin suit is tried, and the plaintiff is adjudged to have no title, and the defendant sues on the replevin bond, the measure of damages in the latter suit is the actual amount of cash which he paid for the portion of the goods bought at the sale, together with the actual value of the remainder of the goods at the time they were sold to others and taken away.

*Replevin—Bond—Condition.*

The conditions of a replevin bond are distinct and independent of each other. One is that the plaintiff shall prosecute his writ with effect; the other is that he shall and will make return of the goods if return of the same shall be adjudged. The penalty for the breach of either is forfeiture of the bond.

Argued March 22, 1904. Appeal, No. 286, Jan. T., 1903, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1900, No. 903, on verdict for plaintiff in case of Pure Oil Company v. Howard Terry, Assignee, and the Real Estate Trust Company of Philadelphia. Before DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ. Reversed.

Assumpsit on a replevin bond. Before BRÉGY, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,788. Defendant appealed.

*Error assigned* was refusal of defendant's point, quoted in the opinion of the Supreme Court.

*Joseph deF. Junkin*, with him *Henry C. Terry*, for appellants.—This case is ruled by McInroy v. Dyer, 47 Pa. 118.

*Thomas Earle White*, for appellee.

OPINION BY MR. JUSTICE BROWN, June 15, 1904:

On January 4, 1897, Howard Terry, assignee of the Pennsylvania Oil Company, issued a writ of replevin against the Pure Oil Company to recover possession of certain personal property. The Pure Oil Company was in possession of it as lessee of Lewis Emory, Jr. The writ was served by the sheriff, his return being : " Replevied, as commanded, and summoned defendant, and property so replevied delivered to plaintiff." As a matter of fact, the plaintiff did not take possession of any of the articles enumerated in the writ. All were allowed to remain in the possession of the defendant, which continued to use them as lessee of Emory without any interference by the plaintiff. The rent for the use of them was paid to Emory by the defendant after the writ was issued and served, just as it had been paid before. So far as there was any actual interference with the defendant's use of the articles replevied, the writ might as well not have been issued. The business of the defendant, according to the testimony of its manager, " ran along just as it had before." This unchanged condition continued until July 13, 1897, when Terry, as assignee, sold the articles he had replevied at public sale, the sale amounting to $1,380.20. Nearly all of the property was purchased by the Pure Oil Company and returned to it, only about one fourth of the proceeds of the sale being for articles purchased by other parties. Except for the very short time required to get the property ready for sale and to sell it, the appellee was at no time deprived of the use of any portion of it by Terry. Subsequently, when the replevin suit was tried, there was a verdict for the defendant, and the judgment on it was affirmed by this court : Pennsylvania Oil Company v. Pure Oil Co., 195 Pa. 388. Suit was then brought on the replevin bond, and, after a judgment for the amount admitted to be due in the affidavit of defense, there was a trial to recover the balance alleged to be due. The jury were instructed that the measure of the plaintiff's damages was the value of the goods on Janu-

ary 4, 1897, when they were replevied, and that it was entitled to recover the amount of the value at that time, less what had been paid to it on account of the judgment taken for the amount admitted to be due. This instruction is the error complained of, the contention of the appellant being that, as the appellee had not in any manner been interfered with in the use of the replevied property until July 13, 1897, the proper measure of damages is : (1) What it paid for the property purchased by and returned to it; (2) the real value of the property which it did not purchase and was not returned to it, with no deduction for auctioneer's commissions or expenses of sale ; and (3) compensation for the detention of the goods from it on the day of sale. The position taken by the appellants is stated in the following single point presented by them and refused by the court: " If the jury believe from the evidence that the plaintiff was practically in possession of all the replevied goods from the time of the service by the sheriff until the actual sale thereof, and bought nearly all the replevied property at the said sale and immediately resumed possession of the same, and subsequently recovered back with interest and costs all the money paid out for said goods, then your verdict should be for the plaintiff, for the value of the goods not purchased with interest on such value to this date, plus the auctioneer's commissions, deducted from the purchase money with interest on such commissions, and for such damages as you may think the plaintiff actually suffered by the detention of the goods from the beginning until the close of the sale."

The conditions of a replevin bond are distinct and independent of each other. One is that the plaintiff shall prosecute his writ with effect; the other is that he shall and will make return of the goods, if return of the same shall be adjudged. The penalty for the breach of either is forfeiture of the bond. Here the breach complained of and proved is that the plaintiff did not prosecute his writ with effect, and the penalty for not having done so might be the sum named in the bond, if the damages sustained, or that ought to be allowed, call for it. If the writ had been sued out fraudulently and without color of right, exemplary damages might be given in the same manner as for a wanton or malicious trespass : McCabe v. Morehead, 1 W. &

S. 513; but the case presents nothing that would justify more than compensatory damages to the appellee.

If these proceedings were trespass vi et armis or trover for the taking and carrying away, or the conversion of appellee's goods, the damages to which it would be entitled would be such only as it actually sustained, there being no evidence of outrage or oppression. This is the rule as to both these actions, and is to be applied to replevin, which, for the application of it, is strictly analogous to trover: McDonald v. Scaife, 11 Pa. 381. What, then will be proper compensation to the appellee? Damages for just what it lost. What did it lose? Nothing except the articles that were sold away from it on July 13, 1897, at a fairly conducted sale. From January 4 down to July 13 it remained in the actual possession, use and enjoyment of the property which had been leased to it by Emory. Its relations with him were not disturbed, and during that period its business, in which it employed all of the replevied articles, went on as if the writ had not been issued. On July 13 it regained from the technical possession of Terry, assignee, most of the goods, none of which had ever been out of its actual possession. To do so, it paid for them, and what it so paid is the first element of the damages it sustained. That this sum must be returned to it, as it already has been, is conceded. What other conceivable item of damages can there be as to articles purchased by it and returned to it? They all really belonged to Emory. The appellee, as his lessee, had the use and enjoyment of them during the entire six months that intervened between the issuing of the writ and the day of the sale, and, when they were again under its absolute control, if it could not return them to its lessor in the same condition they were in in January, it was no fault of Terry, who had done absolutely nothing to impair their value. Proper care of them during the interval had been upon the appellee, for it had continued to use them for its own purposes. If, in the beginning, it had stood aloof from them, and had continued to do so for the reason that they had been taken from it by the plaintiff's process, and they had not been returned to it before the trial, the situation would be entirely different, and the measure of damages which it now invokes would be just.

In McInroy v. Dyer, 47 Pa. 118, the plaintiff below brought

suit for damages for the sale of his property by a constable on
an execution issued against another.    There was evidence that
it had been bought in for the plaintiff at the sale, and, on the
question of the proper measure of damages, we quote at length
from the opinion of STRONG, J., as controlling authority for
the view we have just expressed, there being, as already indi-
cated, no difference in the application of the rule whether the
action be trespass, trover or replevin: "The only important
question in this case is, whether the court below applied a cor-
rect rule for the assessment of damages.    It was an action of
trespass against a constable and another for levying upon and
selling the plaintiff's goods under an execution against Barnes
and Jennings.    The goods had been sold at the constable's
sale, and there was some evidence they had been bought in for
the plaintiff.    The court instructed the jury that the measure
of damages was not what had been paid at the constable's sale,
but the value of the property at the time the sale was made,
with interest thereon from that date.    This was a correct enun-
ciation of the rule, as applicable to ordinary cases of tres-
pass de bonis asportatis, but it is applicable only to cases where
the owner has not regained possession of the goods before the
trial.    If in this case, the property seized and sold by the
constable was bought in by the plaintiff, or for him, at a price
less than its value at the time of the seizure or the sale, that
value was not, in any just sense, a measure of the injury caused
by the act of the constable.    What the law seeks to secure in
an assessment of damages to an injured party is compensation.
He can ask no more than to be made whole.    In most instances
a levy and sale of a plaintiff's goods for the debt of another
deprives him entirely of the property, and nothing less than
its value, therefore, would be compensation.    But if there has
been a redelivery to him, or if he has reacquired it, he may
be compensated with less.    He is then entitled to what it has
cost him to regain possession, to what he has lost by the tem-
porary deprivation of the use of the chattels, and to such other
damages as are commensurate with the injury.    No other rule
than this will do complete justice, and it is supported by au-
thority.    In actions of trover it has often been held that though
there was a complete conversion, and though the general rule
is, the measure of damages is the value of the goods at the

time of the conversion, or the highest value at any time between the conversion and the trial, yet if they have been regained by the plaintiff before the trial, that fact goes in mitigation of damages.    In such a case the value of the use of the goods, during the period in which the plaintiff was deprived of possession, with any injury to the property itself, and the expense of recovering it, have been declared to be full compensation. In Cook v. Hartle, 8 Car. & Payne, 570, a plaintiff was not allowed to recover the value of goods which had been converted to the use of the defendant and afterwards returned.    The same rule was held in Moon v. Raphael, 2 Bing. N. C. 310. In Baldwin v. Porter, 12 Conn. 473, which was trover for saw-logs, the defendant had seized in execution and sold as the property of Birdsay Baldwin, it was held, the fact that Baldwin had bid in the property at the sale for the plaintiffs, who were the true owners, was admissible in mitigation of damages ; and the real damages were declared to be the sum paid at the sale.    The same doctrine was asserted in Curtis v. Ward, 20 Conn. 204, and in Massachusetts in Pierce v. Benjamin, 14 Pick. 356, and Greenfield Bank v. Leavitt, 17 Id. 161.    So also in New York, Reynolds v. Shuler, 5 Cowen, 323, and in Ewing v. Blount, 20 Alabama, 694, the principle was asserted in strong terms.    These were actions of trover, it is true, but there is no reason for a different rule in trespass.    In both, the general principle is that a plaintiff is entitled to such damages as he has actually sustained.    In both, the value of the property lost by the plaintiff is the general standard of measurement of damages, laying out of consideration what may be recovered in trespass for acts of outrage and oppression accompanying the taking.    What will make the plaintiff whole is the same in one form of action as in the other.    No distinction is recognized by the courts.    In Baker v. Freeman, 9 Wend. 36, it was decided that where the goods of a party had been sold under illegal process, and they had been bid off at the sale by an agent of the owner, who purchased for the benefit of his principal, and paid his bid with the money of the principal, the measure of damages in an action of trespass was the amount of the bid and interest, and not the value of the property sold.    And in Brace v. Head, 3 Dana's Rep. (Ky.) 491, which was an action of trespass de bonis asportatis, for goods illegally sold on exe-

cution, it was holden that if the proceeds of the sale went to the plaintiff's benefit, this would operate to mitigate the damages. See also Clark v. Hallock, 16 Wend. 607."

The damages sustained by the appellee for the loss of the articles which it did not purchase are to be measured by the actual value of the same at the time they were sold to others and taken away. The only other measure as to this portion of the replevied property would be its value on January 4, 1897, with interest from that date, from which there would have to be deducted a reasonable sum for the use of it by the appellee during the interval. Under the circumstances, we regard the actual value at the time of the sale as the proper standard for the assessment of damages for these items.

The point submitted by the defendant should have been affirmed. The assignments of error are all sustained and the judgment reversed, with a venire facias de novo.