[No. 831½.]

# GEORGE G. WATERS, RESPONDENT, v. C. C. STEVENSON, APPELLANT.

DAMAGES FOR EXTRACTING ORE FROM MINES—COMPLAINT CONSTRUED—TRESPASS OR TROVER.—The complaint in this case construed: *Held,* sufficient to support a judgment for damages as to the value of the ore in place in the mine, or its value after being separated from the mine.

IDEM—LEASE REQUIRING ROYALTY.—Waters, the plaintiff, leased certain mines to one Armstrong under an agreement that he should receive a royalty of from one dollar and fifty cents to two dollars and fifty cents, proportioned to the value of the ore, for each and every ton of ore extracted. During the existence of this lease, Stevenson, the defendant, claimed to have entered upon the leased mines in ignorance of the dividing lines thereof, and extracted therefrom certain quantities of ore, which he milled and converted to his own use. Armstrong subsequently assigned his lease to the plaintiff, Waters: *Held,* that the court did not err in refusing to charge the jury to include in the defendant's expenses, to be deducted from the gross yield of the ores, the amount per ton that Armstrong was obliged to pay plaintiff as royalty. That plaintiff's rights are just the same as Armstrong's would have been had he brought this action in his own name.

IDEM—MEASURE OF DAMAGES—EXPENSES OF EXTRACTING THE ORE TO BE DEDUCTED—COMPENSATION.—*Held,* upon a review of the facts of this case, that the court erred in instructing the jury not to include in defendant's expenses, to be deducted from the gross yield of the ore, the necessary cost of mining the ores; that in all actions sounding in tort no fraud or culpable negligence appearing, the injured party is entitled to full compensation for his losses, and no more.

APPEAL from the District Court of the First Judicial District, Storey county.

The defendant, after having introduced evidence tending to show the gross amount and value of the bullion which could be extracted from each ton of said ore, for the purpose of showing the real value of the ore, proposed to prove the cost per ton of extracting and working the same, and for this purpose his counsel asked of defendant while on the stand as a witness, the following question: "What was the necessary expense per ton of digging down the ore taken by you from the Trench and Bowers mine?" To which plaintiff's counsel objected, on the ground that the only expense which could properly be allowed to defendant as a deduction

from the gross yield, was the expense necessarily incurred after the ore had been picked down upon the floor of the mine. The court sustained the objection and excluded the testimony, and ruled that no proof could be offered as to any expense incurred or necessary to be incurred before the ore was so picked down from its place in the mine. To which ruling the defendant then and there duly excepted.

The facts are stated in the opinion.

*C. J. Hillyer,* for Appellant.

The recovery in this action should have been limited and measured by the actual loss sustained by the plaintiff, that is to say, the value of the ore as it stood in the mine, or its proceeds, less the necessary cost of mining and reducing. The following authorities were cited and reviewed in appellant's brief: *Martin* v. *Porter,* 5 M. & W. 351; *Wild* v. *Holt,* 9 Id. 671; *Wood* v. *Morewood,* 43 Eng. Com. Law R. 810; *Morgan* v. *Powell,* Id. 736; *Hilton* v. *Woods,* Eq. Cases, vol. 4, (L. R.) 432; *Mueller* v. *St. Louis and Iron Mountain R.,* 31 Mo. 262; *Maye* v. *Tappen,* 23 Cal. 306; *Goller* v. *Fett,* 30 Cal. 484; *Stockbridge Iron Company* v. *Cone Iron Works,* 102 Mass. 86; *Forsyth* v. *Wells,* 41 Pa. St. 291; *Lykens Valley Coal Company* v. *Dock,* 62 Id. 239; *United States* v. *Magoon,* 3 McL. 171. In this state all distinctions of form are abolished. We have but one form of civil action. The reasons given in the common law cases for the rule of damages contended for by respondent, are not applicable to actions under our system. As to the intrinsic justice of the rule for which we contend, there can be no serious question. If one person inadvertently injures the property of another, all that the injured party can reasonably ask is full compensation for the injury. He should be made whole and nothing more. He should have returned to him the full value of that of which he has been deprived, and nothing beyond this. Anything in addition is not compensation but punishment. The moment that it is conceded that a party may recover something more than compensation, the amount of the recovery becomes either indefinite or arbitrary.

Take the present case. The plaintiff is the assignee of a lessee of a mine, and can only recover in the right of his assignor. The lessee, by the terms of his lease, had a right to possess the mine for a specified time, and within certain bounds to take out as much or as little ore as he should please, paying to his landlord a royalty on that taken out. The defendant by mistake crossed the line, and took out some ore within the bounds of the same. What injury has the lessee sustained thereby? Certainly nothing more than the profit which he could have made out of this ore, had it remained undisturbed in the mine. If he could have made no profit out of it, he could have lost nothing. Yet the court instructs that although he could have made nothing out of it, he can nevertheless recover for it something of the defendant, or that if he could have made something, he shall recover in addition to this an amount equal to the cost of timbering and digging down the ore. That is, the plaintiff shall not only not lose anything by this accidental trespass, but may make it the source of actual profit; in this case, in fact, as shown by the verdict, the only profit which he could in any manner have realized.

The court below erred in modifying the instruction asked by defendant. The plaintiff stands in this action in the place of Armstrong, his assignor. Armstrong, by his lease, had the privilege of taking out ore, and was to pay from one dollar and fifty cents to two dollars and fifty cents per ton to his landlord for all that he did take out. It is evident that if we wish to ascertain just what Armstrong lost by the act of defendant, we must deduct from the gross proceeds the amount which he would have been compelled to pay as royalty.

*Lewis and Deal,* for Respondents.

I. The court below adopted the most favorable rule for appellant. The weight of authorities and the analogies of the law are clearly in favor of this rule. (2 Greenleaf on Evidence, section 276; *Ellis* v. *Wire,* 33 Ind. 127; *Ewart* v. *Kerr,* 2 McMullan, 141; *Jenkins* v. *McConico,* 26 Ala. 213.) No man should be allowed to compel another to pay for

labor which he voluntarily performs, without the knowledge of the persons upon whose property such labor is bestowed. This is a fundamental rule of the law of contracts.

Waters could have recovered the ore in question in an action of replevin, wherever he could find it, even in the hands of an innocent purchaser, as he could recover any other personal property. Neither Stevenson or his vendee could, in such a case, demand or claim the cost of mining, hoisting, or hauling. Why then should he be allowed to deduct such cost in an action of this kind? Under our practice, where but one form of action exists, what reason can be given for allowing a deduction for labor, etc., in the one case, and not in the other? The measure of damages in an action of trover or trespass is the value of the property at the time of conversion. (*Boylan* v. *Huguet*, 8 Nev. 345; *Carlyon* v. *Lannan*, 4 Nev. 156.)

The very earliest period at which the conversion in this case took place was when the ore became personal property. Hence, the plaintiff was entitled to the value of the ore at the time it was picked down, or when it became personal property capable of conversion. (Sedgwick on Measure of Damages, sec. 477–479; *Andrews* v. *Durant*, 18 N. Y. 496; *McCormick* v. *Penn. Cent. R. R.*, 49 N. Y. 303; *King* v. *Orser*, 4 Duer, 431; *Yater* v. *Mullen*, 24 Ind. 277; *Ripley* v. *Davis*, 15 Mich. 75; 13 Fla. 501; 20 Wis. 152; 26 Conn. 389; 30 Vt. 307.) The least damage ever allowed in cases like the one under consideration is the value at the time of severing the ore, or its becoming personal property. (*Kier* v. *Peterson*, 41 Penn. St. 357; *Martin* v. *Porter*, 5 M. & W. 351; *Cushing* v. *Longfellow*, 26 Me. 306; *Bennett* v. *Thompson*, 13 Ired. L. 146; *Smith* v. *Gonder*, 22 Ga. 353; Bainbridge on Mines, 514; 3 Ad. & El. 278; 32 Ill. 207; Sedg. on Dam. 670; 13 Ind. 46; 23 Cal. 306.) A man is bound to know the boundaries of his mining claim. (*Maye* v. *Tappen*, 23 Cal. 306.) There can be no legal excuse for a trespass of this kind, and a person committing it must necessarily be treated as willfully committing the wrongful act. The sum which Armstrong was to pay to Waters should not be deducted in estimating

the measure of damage.    (Bainbridge on Mines, 6–9; *Wild* v. *Holt*, 9 M. & W. 671.)

By the Court, LEONARD, J.:

The record in this case discloses the following material facts: On or about the second day of October, 1871, plaintiff was the owner, and in possession of a certain mining claim in Gold Hill mining district, in this state, known and called the Bowers claim, and was in possession, and entitled to the possession, as lessee thereof, of a certain mine known and called the Trench mine.    On the day stated, plaintiff leased a portion of each of said mines to one Armstrong, for the period of twenty months; that is to say, from October 1, 1871, until June 1, 1873.    By the terms of the lease Armstrong had the right, at his own cost and expense, to enter upon and take possession of both of said mines, from and including the surface, to and including the five hundred-foot level of each, and extract therefrom all metalliferous ores he might desire to take, and convert the same to his own use.    Armstrong agreed to pay plaintiff for each and every ton of ore extracted and taken which would mill fourteen dollars per ton, the sum of one dollar and fifty cents; and for each and every ton so extracted and taken which would mill fourteen dollars and upward to sixteen dollars, the sum of two dollars; and for each and every ton so extracted and taken which would mill over sixteen dollars per ton, the sum of two dollars and fifty cents.    Armstrong also agreed to take all ore from the mines which would mill twelve dollars per ton, and to work the ore taken within sixty-five per cent. of the assay value. By the terms of the lease no rights were reserved by plaintiff, the lessor, other than the privilege of having access to the mines at all times, for the purpose of inspecting the same, and the right to declare the lease forfeited at his option, in case of failure to make payment for the ores excavated and taken away.    It does not appear that plaintiff declared a forfeiture of the lease, nor is it denied that the lease was in full force until the end of the term.    Armstrong agreed to work the mines in a good, workmanlike

manner, and return the machinery leased in connection therewith in good working order, ordinary wear excepted. He agreed, also, upon the expiration of the term, to surrender said mines, with the dumps, cars, tools, and appurtenances, to plaintiff. Armstrong took possession of both mines and the other property mentioned, under the lease, and engaged in extracting and taking out ores.

Defendant admitted in his answer, and at the trial, that he entered upon a portion of each of the mining claims leased to Armstrong, subsequent to the date of the lease, and that he mined and converted to his own use a certain number of tons of metalliferous ores containing gold and silver; but he denied that he did it willfully or intentionally, and alleged that his entry upon the said mining claims was the result of inadvertence and mistake, under the *bona fide* belief that he was mining within the boundaries of his own adjoining mines. The verdict of the jury was in favor of defendant's alleged *bona fides*. On the ninth day of April, 1873, Armstrong, for a valuable consideration, sold and assigned to plaintiff both leasehold interests before mentioned, and on the twenty-third day of June, 1874, for a valuable consideration, sold and assigned to plaintiff all claims and demands of every nature and kind which he had against defendant described in the complaint herein.

The main question presented for our consideration is as to the proper measure of damages in a case of this kind. In the court below defendant contended that the recovery should be limited to, and measured by, the value of the ore in place, as it lay in the mines before his entry; that plaintiff should recover only the gross proceeds of the ores extracted and worked by defendant, less the necessary cost of mining, assorting, hoisting, transporting and milling, and that plaintiff was not entitled to recover the amount agreed by Armstrong to be paid to plaintiff as royalty. The court held, and so instructed the jury, that if defendant by mistake, and not willfully, wrongfully extracted ores from the mines being worked by Armstrong, plaintiff should recover their gross yield, less the necessary expense of assorting, transporting, hoisting, hauling and milling, and all other

necessary expense after the ore was picked down in the mine.

Defendant requested the court to instruct the jury to include in his expense the amount per ton which Armstrong, by his agreement, was obliged to pay plaintiff for the privilege of extracting the ores, but this instruction was refused. It is urged by counsel for defendant that the court erred in charging the jury to exclude from his necessary expenses, to be deducted from the gross yield of the ores, the necessary cost of mining, and the amount per ton agreed to be paid by Armstrong to plaintiff.

Plaintiff claims to recover under and by virtue of the assignments from Armstrong, and it is admitted by counsel on both sides that he can recover, in this action, the same amount that could have been recovered by Armstrong, had no assignments been made, and no greater sum.

Counsel for defendant claims that this is an action of trespass for damages done to real estate; while counsel for plaintiff seem to treat it as trover or trespass *de bonis*, at least they urge the adoption of the same rule of damages as they assert is the true rule in those cases.

It is alleged in the complaint: "That in the month of November, 1871, one W. H. Armstrong was in the lawful possession of, and until about the ninth day of April, 1873, continued in the lawful possession, by virtue of a certain leasehold interest therein, of all that portion from the surface down to and including the 500-foot level or adit of that certain mining claim, quartz vein or lode situated in Gold Hill mining district,    *    *    *    known and called the 'Bower's claim,' and described as follows:   *    *    *    and said Armstrong was entitled, by said leasehold interest in his own right, to all the gold and silver-bearing ores and earth therein, from the surface to said 500-foot level or adit; that plaintiff was, at all the dates hereinbefore and hereinafter mentioned, the owner of the mining claim, quartz vein, or lode above described; that while said Armstrong was so in the possession and entitled to the possession, by virtue of his said leasehold interest in the same, to wit, on or about the thirteenth day of May, 1872, said defendant

wrongfully and willfully entered into and upon said mining claim and ledge aforesaid, above the 500-foot level or adit thereof, and commenced extracting, and did extract, take and wrongfully carry away from said mining ground, * * * within five hundred feet of the surface thereof, large quantities of valuable metalliferous ores containing gold and silver, to wit, one hundred and sixty tons of the value of four thousand dollars, and did deprive said Armstrong thereof; that but for the wrongful act of the defendant, as aforesaid, the said Armstrong would have had and received all the aforesaid metalliferous ores * * * to his own use, under and by virtue of said lease; that by reason of the premises said Armstrong was damaged by defendant in the sum of four thousand dollars in United States gold coin."

Plaintiff then, in substantially the same language, states another cause of action against defendant by reason of his alleged willful, wrongful, and unlawful entry upon the said Trench mine, and extracting and carrying away therefrom four hundred and eighty tons of metalliferous ores, containing gold and silver of the value of twelve thousand dollars.

It is then alleged, as applicable to both causes of action, "That said Bowers claim, * * * and the said Trench mine were, at the times aforesaid, and are only valuable for and on account of the metalliferous ores bearing gold and silver, which were imbedded therein." * * * * *

As we regard the cause, it is a matter of no practical consequence which theory is technically correct as to the form of the pleadings. The result, in any event, must be in accordance with the facts alleged and proven. The action is brought to recover damages for certain unlawful acts performed by defendant. It is brought upon the whole case, and all the facts constituting plaintiff's cause of action as to each mine, are stated in one count. It is said in *Jones* v. *Steamship Cortes*, 17 Cal. 487, that "every action under our practice may be properly termed an action on the case." Our statute provides that "the complaint shall contain a statement of the facts constituting the cause of action in ordinary and concise language. If a recovery of

money or damages be demanded, the amount thereof shall be stated." (C. L. sec. 1192.) The complaint charges that defendant willfully and unlawfully entered upon the mines described, and willfully and unlawfully extracted therefrom and converted to his own use six hundred and forty tons of ores, of the value of sixteen thousand dollars, to plaintiff's damage in the same sum. A cause of action is stated by an allegation of the facts, and the alleged amount of damages is demanded; and whether the pleader intended to allege trespass to the land, or trespass *de bonis,* or trover, the result is that the plaintiff is entitled to recover just such damages as are allowable from the facts alleged and proved, which make up the whole case. The amount, of course, will depend upon the rule adopted in ascertaining the true measure.

The facts stated in the complaint are sufficient to support a judgment for the damage sustained, whether that be the value of the ores in place, or after they were separated from the mines.

It is said by counsel for defendant that the court erred in refusing to charge the jury to include in his expenses to be deducted from the gross yield of the ores, the amount per ton that Armstrong was obliged, by the terms of the lease, to pay plaintiff as royalty. In this connection it is especially important to keep in mind the fact that plaintiff's rights are just the same as Armstrong's would have been had the latter brought this action. By the terms of the lease, for twenty months, Armstrong had the same right to work the mines mentioned as had plaintiff before the execution of the lease. He could excavate, carry away, and mill all the ores contained in the portion of the mines described in the lease. The right of possession was in him exclusively. He could have maintained an action against all persons disturbing his possession or trespassing upon the premises, including plaintiff himself. He could have used force necessary to resist defendant's entry or his removal of the ores, or he could have invoked and received the aid of the law for his protection. Plaintiff could not have maintained trespass for an injury done to the land,

because the possession and right of possession were exclusively in Armstrong.

Armstrong had the right to give defendant permission to mine and carry away the ores. So, if defendant wrongfully entered and worked the mines without his permission, his right was to allow him to do so and take his chances of recovery in an action for damages, instead of working them himself, or instead of making forcible resistance to his entry or resorting to legal process for the protection of his property. It is true that under the lease Armstrong had the privilege of taking out as many tons as he pleased and no greater number; but his right to the whole was just as absolute and inviolable as it would have been had he positively agreed to mine all the ores in the mines. During the life of the lease, an unlawful entry was a disturbance of the rights and possession of Armstrong alone, and every pound of ore taken belonged to him and not to his lessor. Had the taking of ores been prohibited by the terms of the lease, they would have become the property of plaintiff as soon as they were detached from the mines; but the right of mining and appropriating the ores having passed to Armstrong, the right, as well as the remedy for its infringement, remained in him until the assignment to plaintiff. (Taylor's Landlord and Tenant (5 ed.), secs. 173–4–5–6–7–8; Washburn on Real Prop. Vol. 1, marg. p. 314; *Attersol* v. *Stevens*, 1 Taunton, 200; *Schermerhorn* v. *Buell*, 4 Denio, 425.) But while the lease gave Armstrong the rights stated, he could not avail himself of them, either by taking out the ores himself, or by receiving satisfaction therefor from defendant, without fixing his own liability to plaintiff according to the terms of the lease. Such being the case, it is not necessary to decide whether Armstrong would or would not have been liable to plaintiff in an action for waste on account of the ores taken by defendant. (*Attersol* v. *Stevens, supra; Cook* v. *Champlain T. Co.*, 1 Denio, 104: Taylor's Landlord and Tenant, secs. 178, 343 *et seq.*, 689; Smith's Landlord and Tenant, 268; *Austin* v. *H. R. Co.*, 25 N. Y. 340.) If Armstrong had sold his right to the defendant to work these mines, and had received the contract

price therefor; or if, after discovering his mistake, defendant had paid Armstrong for the ores wrongfully taken, there can be no doubt that plaintiff could have recovered of Armstrong the full amount of royalty stated in the lease. In either case, the fact that Armstrong had received satisfaction from defendant, would have been proof that the former claimed the benefits of the lease as to the ores mined by defendant, and that he recognized the validity of plaintiff's claim against him according to the terms of the contract. He could not derive the benefits of the lease without assuming the burden it imposed. Had he without suit received satisfaction from defendant, the money received, as between him and plaintiff, would have taken the place of the ores, and he could not have escaped payment on his covenant for all ores taken. Possession and right of possession having been in Armstrong, and the ores, both in and out of the mine, having been his property, he would have had an undoubted right to bring this action. Had he done so, and obtained satisfaction against defendant by the law's aid rather than by agreement, the result would have been precisely the same as that before stated. In either case he would have been liable to plaintiff for the amount agreed to be paid. Had Armstrong brought this action, then defendant could not have included the royalty in his expense to be deducted from the gross yield of the ores. His rights are no greater in an action brought by plaintiff, the assignee of Armstrong. (*Attersol* v. *Stevens*, *supra.*; *Wild et al.* v. *Holt,* 9 M. and W. 671.) It follows that the assignment of error just considered cannot be sustained.

The next and more important question to be considered is: Did the court err in instructing the jury not to include in defendant's expenses to be deducted from the gross yield, the necessary cost of mining of the ores?

We are of the opinion that in all actions sounding in tort, no fraud or culpable negligence appearing, the aim of the law is to award to the injured party full compensation for his actual losses, as the law defines those words, and nothing beyond that amount.

In *Buckley* v. *Buckley*, 12 Nev. 423, which was an action

to recover the possession of personal property, or the value in case delivery could not be had, and damages for its detention, or the value of the use thereof, we held, if a return of the property could not be had, and its value had been appreciated by the labor and expenditure of the wrong-doer acting wrongfully but in good faith, that the latter should not be permitted to retain any profit, but that he should be allowed from the appreciated value, after the real owner had been fully compensated, all his expenses necessarily incurred in increasing the value of the property, if so much remained after the actual damages had been satisfied.

In *Ward* v. *C. R. W. Co. et al.*, subsequently decided, which was an action to recover the value of wood alleged to have been converted by defendants at Empire city, in this state, we held that the conversion was in Alpine county, California, where the wood was less valuable than at Empire city, and that plaintiff was entitled to recover the value of the wood at the former place, with interest, but not the enhanced value caused by the labor and expenditure of defendants; that such measure of damages fully compensated plaintiff's actual loss, and no greater sum should be awarded.

In both of those cases the value of the property was enhanced after the conversion, while in this case, the expenditure not allowed defendant by the court, and by which the value of the ores was increased, was incurred before they became personal property, and consequently before conversion was possible. But we can perceive no reason why the distinction between the facts of those cases and this can justify the adoption of a principle in the former that should not be adhered to in the latter.

It is said by counsel for plaintiff that no less stringent rule of damages should be adopted in trespass than in trover, and that in the latter action, the rule adopted by this court in *Boylan* v. *Huguet*, 8 Nev. 345, is the value of the property at the time of the conversion, with interest. That such is the general rule, there can be no doubt; and that it should be so is equally plain, because in most cases such an award makes full compensation for the injury com-

plained of, and no more.   In that case the court stated the
general rule, and applied it to the case then under consid-
eration.   But it declared the governing principle to be
"complete indemnity to the party injured, but no punish-
ment to the wrong-doer."

The reason why the general rule stated was adopted, is
because, in most cases, it approaches nearer making full
compensation than any other; but we do not understand
that this court has ever held that it is unvarying in its ap-
plication, if in any case a departure from it will better ac-
complish the object of the law.   It is well known that to
the general rule there are many acknowledged exceptions.
In *Pierce* v. *Benjamin*, 14 Pick. 361, the court says: "The
general rule of damages in actions of trover is unquestion-
ably the value of the property taken at the time of its con-
version.   But there are exceptions and qualifications of this
rule as plain and well established as the rule itself.
Wherever the property is returned, and received by the
plaintiff, the rule does not apply.   And when the property
itself has been sold, and the proceeds applied to the pay-
ment of the plaintiff's debt, or otherwise to his use, the
reason of the rule ceases, and justice forbids its application.
In all such cases, the facts may be shown in mitigation of
damages."   And in *Baldwin* v. *Porter*, 12 Conn. 484, it is
said: "Both the rule and exceptions proceed upon the
principle that the plaintiff ought to recover as much, and
no more, damages than he has actually sustained, which
commonly is the value of the property; and hence the gen-
eral rule.   No good reason, consistently with moral prin-
ciple, can be suggested why greater damages should ever
be recovered than have in truth been sustained, except
in those cases where the law permits by way of primitive
justice, the recovery of vindictive damages."   (See, also,
*Curtis* v. *Ward*, 20 Conn. 206.)   We agree fully with the
principle announced by that court, and shall endeavor to
apply it to this case.

Although entertaining the greatest respect for the courts
that have held otherwise, we are unable to say in this case,
where the verdict of the jury prohibits the imposition of

exemplary damages, that the value of the ores when separated from the mines should be taken as a just measure of Armstrong's actual injury, rather than their value at the mill, or indeed the value of the gold and silver extracted, except that the first is a nearer approach to the true measure than the last. The question should be, and is, how much Armstrong lost by reason of defendant's wrongful acts complained of. It is alleged in the complaint that the mines were, and are, valuable only on account of the metalliferous ores of gold and silver imbedded therein; that but for the wrongful acts of defendant, Armstrong would have had and received all of said ores to his own use, under and by virtue of said lease. In other words, if defendant had not extracted the ores, Armstrong would have done so. If defendant had not expended his money in mining the ores Armstrong would have expended his own. So, too, it might be added that if defendant had not taken out the ores, transported them to the mill, and there separated the precious metals from the earth, in all probability Armstrong would have done so. He could not have realized any profits under his lease without sub-letting or working the mines himself. There is no allegation that defendant deprived him of the former privilege, and had he worked the mines, it is certain that the cost of mining the ores would have been an expense to him, as well as the transporting and milling, and that in ascertaining his profit, or the value of his estate under the lease, he necessarily would have deducted the first, as well as the second and third item of expense mentioned. If our object is to ascertain Armstrong's loss by reason of defendant's wrongful acts, we must, it seems to us, in this action, begin with the first act complained of, the unlawful entry, and compare Armstrong's rights and interests at that time, with what they were after the termination of the wrongs stated. We must confine our view to the condition of the property and the extent of Armstrong's property rights when their value was the measure of Armstrong's actual loss, rather than their value on a subsequent day, when the ores, instead of representing such loss, had been appreciated by defendant's labor.

It was a matter of no practical importance to Armstrong whether defendant dug, carried away and milled the ores, or destroyed them in the mines. In either case his loss would have been the same. The conversion of the ores was only an intermediate act in a series, which accomplished the destruction of his property as it existed at the time of defendant's entry and the commission of the acts complained of. Had the ores been mined by Armstrong before defendant carried them away, Armstrong's loss must have been greater than it was after they had been mined by defendant. If so, the combined acts of defendant, in mining the ores and taking them away, were not as detrimental to Armstrong's interests as the last act alone would have been after the former had been performed by him. But it is said that the judgment is right, because Armstrong was entitled to the ores when separated from the mine; because he could have recovered them in specie; because defendant was a trespasser, and as such cannot receive anything for his expenditure. But, admitting all these things except the conclusion stated, if our object is to find Armstrong's actual loss, how do they all show that he or plaintiff should receive in damages not only the value of the ores as they were before defendant's entry, all either could have realized had he worked them, and as much more as was the cost of mining, but also that defendant should lose twice the expenses incurred? How can such a rule be justified in this action, when in trover or replevin the rightful owner, as a general rule, can recover only the value at the time of conversion, with interest, although the property has been appreciated in value by the labor of defendant? The same argument was used in the latter cases, in favor of giving the whole value to the plaintiff if the property was wrongfully taken from him, however innocent the acts of defendant might have been. But this and many other courts have decided against such a rule, as unreasonable, unnecessary, and unjust. The same courts have said that in replevin the rightful owner should have the property if he can get it, although appreciated in value by defendant; not because he can justly claim the whole, but because he is entitled to his

own, and generally, in such cases, he cannot get that without taking what has been added at the expense of the wrong-doer; that in such case the latter must lose, however innocent he may have acted; but that if the property cannot be returned, and damages have to be given for the wrong, there is no difficulty in doing justice to both parties, allowing the rightful owner his actual losses, and the other his expenses, in whole or part, as the appreciation may permit. In replevin, the property is at all times the plaintiff's, if it was so when taken, no matter how greatly appreciated in value; at all times he has a right to recover it in specie, and the defendant is a continual trespasser so long as he retains it. Then, if the property cannot be returned, why not give its increased value with as much propriety and justice, as in this action, to measure plaintiff's damages by the value of the ores when separated from the mine? We are unable to find any distinction in principle between the two cases. In both, plaintiff is only entitled to his actual loss. In neither is it necessary to give him more in order that he may have what belongs to him; and in both, if more is given, the plaintiff is allowed a profit by reason of an innocent misadventure of defendant.

It often happens in deserted mining towns that buildings become useless except to be taken down and removed to some other locality. In such cases they might easily be more valuable when taken down than they were when standing. Suppose, under such circumstances, in the honest belief that a certain building belongs to him, A. should take down the house of B. and appropriate the lumber to his own use; that it was worth one thousand dollars before it was taken down, and the lumber one thousand two hundred and fifty dollars afterwards. Suppose again that C., in the same belief that another house adjoining, and of the same value, belongs to him, burns and destroys it. It turns out that the house claimed and burned by C., also belonged to B.; B. brings an action against each, alleging in the first case an unlawful entry, the tearing down and carrying away, etc.; and in the other an unlawful entry, the unlawful burning and destruction. In the latter case it is certain

that the maximum limit of recovery is the amount it would cost to replace the building, and it would not be that much if such cost would exceed its value. The value of each building was the same to B., and in each case, as to him, the result of the unlawful acts of A. and C., respectively, is the destruction of his property. Can it be possible, because A. took his down and carried away the lumber, thereby increasing its value, instead of destroying it, that B. can recover of him one thousand two hundred and fifty dollars, and only one thousand dollars from C.?

In *Harvey* v. *S. S. M. Co.*, 1 Nev. 543, appellant claimed error, because the court below refused to instruct the jury to give him what it would cost to remove from his lot dirt and rocks piled thereon by defendant. This court sustained the lower court, and stated in substance, that in some cases appellant might recover the amount it would cost to restore the property to the condition it was in before the wrong committed; but in cases where such cost would exceed in value of the property, the last amount only could be given in damages. In other words, plaintiff was not entitled to receive an amount greater than the value of the property destroyed by the trespasses of the defendant. So, in this case, if it were possible to replace the ores in the mines, as they were before defendant's entry, it is difficult to perceive how plaintiff could recover an amount greater than their value in place, if the cost of replacing them would exceed such value, or how he can now recover more than such value, although, from the character of the property, they cannot be put in their former position. If defendant had innocently flooded one of the mines in question and worked the other, so that Armstrong could not take ore from either, should not the same rule of damages govern each case? Three men own adjoining claims in a marble bed; A. and B., by mistake, work over the lines upon the property of C.; each takes out and appropriates to his own use the same number of perches of the same value in the bed; A. takes his in small blocks, and consequently expends less than B., who at great cost gets out large, valuable blocks, to be used in public buildings. The actual damage done to the marble

bed is the same in each case, but the blocks separated by B. are, in aggregate, as much more valuable than those taken by A., as B.'s expense of separation was greater than A.'s. It seems plain to us that in separate actions like this the same rule of damages should govern both cases. With apparent candor it is urged by counsel for plaintiff that, if the cost of mining may be deducted from the gross yield of the ores, it must follow if Armstrong had taken possession of the ores without action, that defendant could have recovered from him the amount of such cost. We answer this statement of counsel by referring to what has been said in relation to the right of the owner of property to have it returned, if a return can be had, in an action of replevin. The rule and the reasons therefore are the same here as there. That every person has the right to use and manage his own property as he deems proper, so long as he does not injure others, cannot be doubted; but it must often happen that one man will, by mistake, overstep his line and trespass upon the rights of another. When such is the case our sense of justice and the law of the land declare that, as nearly as possible, the injured party shall be restored to his former condition, or compensation in damages shall be made. The wrong-doer shall make good the loss, but beyond that he shall not suffer for a wrong committed but not intended. We have endeavored, thus far, to consider this case upon well settled principles, without particular reference to the decided cases. Let us now look at the decisions upon this and kindred questions.

Our attention is called to the following cases by counsel for respondent: *Kier* v. *Peterson*, 41 Pa. St. 357, an action of trover for fifty thousand gallons of petroleum, which was the unexpected product of certain salt wells which had been sunk by defendant on land leased to him by plaintiff for the purpose of manufacturing salt. The court held that the petroleum belonged to the defendant, and hence did not consider the question of value, in relation to which there was no contest. Woodward, J., concurred in the judgment on the sole ground that plaintiff had misconceived his action, and alone remarked that he thought the judge below

correctly comprehended the measure of damages; that "plaintiff was not entitled to the labor of defendant but only for the value of the oil at the instant of separation from the freehold." It is probable that the court might have so held in that case, had the petroleum belonged to plaintiff, for the reason, that the defendant had expended nothing on account of that; he would have been to the same expense and trouble for the salt. *Martin* v. *Porter*, 5 M. & W. 353, was trespass for breaking and entering plaintiff's close, a coal mine, by mistake, and digging and carrying away coal. It is similar to this case, and so far as we know, has been and is, the foundation of the rule, among the decisions, claimed by counsel for respondent. Such being the case, and the leading opinion being short, we give it entire:

"LORD ABINGER, C. B. I am of opinion that there ought to be no rule in this case. If the plaintiff had demanded the coals from the defendant, no lien could have been set up in respect of the expense of getting them. How, then, can he now claim to deduct it? He cannot set up his own wrongs. The plaintiff had a right to treat these coals as a chattel to which he was entitled. He did so, and the only question then was their value. That the jury have found. It may seem a hardship that the plaintiff should make this extra profit of the coal, but still the rule of law must prevail." Barons Parke, Alderson and Maule agreed upon the grounds stated by the chief baron. It will be seen that this decision, like all that follow it, was based upon a principle not accepted by this court, viz.: "That if the owner cannot obtain his property in specie, he is entitled in all cases to the increased value.

*Morgan* v. *Powell*, 3 Adol. & E., N. S. 281, from the printed report, appears to have been similar to *Martin* v. *Porter*, although it is stated in *Cushing* v. *Longfellow*, 26 Me. 310, to have been an action of trespass *de bonis asportatis*. However, the court followed the rule adopted in the former case; Lord Denman C. J., and Patterson, Williams and Coleridge, JJ., sitting in banc. The case was first heard before Coleridge, J., at the Monmouthshire assizes in 1841, at which inquiry he stated that he felt bound by

*Martin* v. *Porter*, though he expressed a doubt as to its correctness, and in a note to the case we find the following: "By a short-hand writer's notes, his lordship appears to have said: 'But for that case I should have thought that the ordinary principle would have prevailed, and that Sir Charles Morgan would be entitled to recover compensation only for the damage he has actually sustained, and that all he would have a right to ask at your hands would have been to put him in the same position as he would have been if the coal had never been stirred.'"

In "Bainbridge on the Law of Mines and Minerals," marg. p. 514, the author says, in substance, that in actions of trespass for working beyond the boundaries of mining claims, the measure of damages is the full value of the minerals as soon as they are separated from the freehold; and, as authority for the rule, he refers to *Hilton* v. *Woods*, Law Rep. Eq. Cas., vol 4, p. 432; *Maye* v. *Tappan*, 23 Cal. 306; *Goller* v. *Fett*, 30 Cal. 481; Coleman's Appeal, 62 Pa. St. 278; *Bennett* v. *Thompson*, 13 Ired. (Law) 146; *Lykens & Co.* v. *Dock*, 62 Pa. St. 232. An examination of the cases cited will show that *Maye* v. *Tappan* and *Bennett* v. *Thompson* are the only ones that in any manner sustain the rules stated by the author. But on p. 448 he says that, in equity, if there is no fraud or culpable negligence, compensation will be confined to actual profits accruing, or which might have been fairly acquired from the trespass; that the market price of the minerals at the mouth of the mine will be taken, and all just allowances be made for the costs of working. So it seems that the courts of equity in England, being untrammeled by forms, give as the actual damages in such cases the gross proceeds, less the necessary expenses of working, including the cost of mining. (*Wild* v. *Holt*, 9 M. and W. 671, follows *Martin* v. *Porter*.)

The above are all the English authorities to which we have been referred bearing upon this question in favor of respondent's position, and all that we have been able to find. The American cases cited by counsel for respondent are: *Cushing* v. *Longfellow*, 26 Me. 310, which was an action of *trespass de bonis asportatis*. The court held that the value

of the logs sued for, at the time they were severed from the freehold, was the true measure of damages; that they then became a chattel, so that *trespass de bonis* would lie for them. The form of the action evidently effected the result. The last part of the decision is instructive, at least, as tending to show the growing inclination of courts to do justice by giving actual compensation for damages, sustained *Bennett* v. *Thompson*, 13 Ired. 148, follows *Martin* v. *Porter* and *Morgan* v. *Powell*, no other authorities being cited, and no reasons for the rule being given. The same is substantially true of *Smith* v. *Gondor*, 22 Ga. 353. The *Chicago So. Br. Dock Co.* v. *Dunlap*, 32 Ill. 210, may be entirely correct, but it is not in point in this case. Sedgwick on Dam., marg. p. 536 *et seq.*, is also referred to by counsel for respondent. The author there gives the English doctrine as laid down in *Martin* v. *Porter*, but in a note at p. 538 denies that such is the true rule, and strenuously adheres to that enunciated in *Forsyth* v. *Wells*, 41 Pa. St. 291. We cannot regard either *Maye* v. *Tappan*, 23 Cal. 306, or *Goller* v. *Fett*, 30 Cal. 485, as an authority giving the rule in that state. The first does, indeed, come to the conclusion contended for by respondent, but we are unable to comprehend how such a conclusion was arrived at, after reading other portions of the opinion. In the last case the court say: "The court erred also in refusing to permit defendants to prove the expense of digging the gold-bearing earth. The point was directly adjudged in *Maye* v. *Tappan*, 23 Cal. 306." Sawyer, J., justly distinguished for his painstaking, concurs in the reversal on the sole ground that defendant should have been permitted to prove the expense of digging the gold-bearing earth. But, as already observed, in *Maye* v. *Tappan*, the court adopted a rule directly opposite the one declared correct in *Goller* v. *Fett*, and yet the decision in the latter case seems to have turned upon the former. There is a mistake somewhere, and we can only disregard both.

Our particular attention is still called by counsel for respondent to the case of *The Barton Coal Co.* v. *Cox*, 39 Md. 3, decided in 1873. The facts of that case were similar to

those presented in this, and the decision is favorable to respondent's theory.

The declaration in that case, however, was somewhat different from the complaint in this. It contained three counts. The first charged that the defendant broke and entered the *locus in quo*, and mined and carried away large quantities of coal; the second and third set out the trespasses with greater minuteness, and charged that defendants then and there took and carried away and converted the coal to their own use. The court says: "The declaration contained three counts, which, so far as the distinctive forms of action can be recognized in our present system of pleading, may be designated as trespass *quare clausum fregit et de bonis asportatis* combined." So, it is evident that the pleadings in that case allowed the adoption of such a rule of damages as the court deemed proper in an action of trespass *de bonis*, while there is not such a count in the complaint in this case. Although we cannot know what the decision would have been had the declaration there been like the complaint here, we shall assume that it would have been the same if the second and third counts had been omitted, or if the second and third had been combined with the first. In the first place, the court holds (p. 22), that in an action of trover, where there is no fraud or culpable negligence, the plaintiff may recover the enhanced value of the material either at the place of taking or manufacture, a conclusion that finds no concurring opinion in this court. Had the court been of different mind upon that important question, it is improbable at least that it would have arrived at a similar decision upon the question under consideration. After stating that there is a diversity of opinion between the English and American cases, and that the latter cases are not uniform, the court cites *Forsyth* v. *Wells*, 41 Pa. St. 291; *Herdic* v. *Young*, 55 Id. 176; *United States* v. *Magoon*, 3 McLean, 171; *Goller* v. *Fett*, 30 Cal. 482; *Coleman's Appeal*, 62 Pa. St. 278; *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 84; all of which are strongly against the decision made. The court then says: "In the absence of any adjudications in this

state on the question, and the conflict of authorities in others, we must endeavor to deduce the principles which should govern in cases of this character from a condensed statement of a few leading cases in England, where this species of property has long been the basis of national wealth, and often the subject of judicial consideration."

The court then cites *Martin* v. *Porter*, *Morgan* v. *Powell*, and *Wild* v. *Holt*, and decides the case according to the rule adopted by the English cases cited. No reasons are given for preferring the rule followed in the English cases rather than in the American; but the decision seems to have been based solely upon the ground that the rule adopted had been declared to be the correct one by some of the English courts. As an authority, the case adds to the English decisions the approval of the Maryland court, which we highly respect, although unable to follow its example. *Robertson* v. *Jones*, 71 Ill. 405, was similar to this case. The appellate court held that the measure of damages for coal taken by defendant upon plaintiff's land was its value as a chattel when first severed from the mine. The foundation of this decision was also laid in a rule which, in *Ward* v. *Simpson*, we said "was not supported by sound reason or sustained by the weight of decided cases, and hence should not be followed." That court recognized as correct the rule that in trover and replevin the plaintiff may, in the absence of fraud, etc., recover in damages the appreciated value of the property taken, because he may recover the property in specie if a return can be had, and then adds: "The moment it, the coal, was severed from the freehold, a right of action then existed in favor of appellant. If he could maintain replevin, and recover the coal severed from the land, and upon this there can be no doubt, upon the same principle, in an action of trespass, he has the right to recover the value of the coal after it was dug in the bank."

In the *McLean County Coal Company* v. *John Long*, 81 Ill. 359, an action of trover for the conversion of coals taken from the land of plaintiff, the controversy was as to the proper measures of damages. The court followed *Robertson* v. *Jones*, *supra*, holding that the rule was the same in

trover as trespass. Then, as the rule in trover is different here, so it may differ in trespass. Let us now turn to some of the cases wherein the rule contended for by appellant has been adopted. *Wood* v. *Morewood*, was tried at the Derby assizes in 1841, before Parke, B. The declaration contained a count in trover for coals taken, and another for damages for injury to plaintiff's reversionary interest in the land. The baron presiding, who had participated in the decision in *Martin* v. *Porter*, instructed the jury, " that if there was fraud or negligence on the part of defendant they might give as damages, under the count in trover, the value of the coals at the time they first became chattels, on the principle laid down in *Martin* v. *Porter*, but if they thought that the defendant was not guilty of fraud or negligence, but acted fairly and honestly, in the full belief that he had a right to do what he did, they might give the fair value of the coals as if the coal fields had been purchased from the plaintiff." The latter rule was adopted by the jury, and the decision was acquiesced in.

*Hilton* v. *Woods*, vol. 4 Law Rep. Eq. Cas. 438, was decided by the vice-chancellor in 1867. He preferred the rule of *Wood* v. *Morewood*, to that of *Martin* v. *Porter*, and followed the former.

Although from the printed reports it appears that the two cases last mentioned were similar; yet, on the other hand, it seems improbable that Baron Parke, in the latter, would have disregarded the rule established by the former, in which he participated, if in that case there was no fraud or culpable negligence.

*Barnsley Canal Navigation Company* v. *Twibill*, vol. 3, English Railway Cases, 356, is of interest in this connection. Under the canal act, a canal company purchased the land over which the canal passed, but the coal mines and coal were reserved to the owners, who were to be at liberty to work the mines so as not to injure the canal. A., the owner of the land over which the canal passed, sold it to the company, and afterwards leased the coal up to the side of the canal on one side, and up to the towing-path on the other, to B. A. subsequently contracted with the com-

pany for the sale to them of the coal under the canal and towing-path, and eight yards on each side, which they required for the safety of their canal.   It was decided by the court, " that B. was entitled to compensation in respect of the interest in the coal which he had acquired under the lease, viz., the profit to be derived from the coal when gotten, after deducting the expense of getting." (See, also, Mayne on Law of Dam., 227, 228; *Chipman* v. *Hibberd*, 6 Cal. 162.)

*Stockbridge Iron Company* v. *Cone Iron Company*, 102 Mass. 86, was an action of tort praying for relief for injury to plaintiff's land by digging a shaft on adjoining land occupied by defendants, and thence digging into and under plaintiff's land and taking therefrom large quantities of iron and other ores.   Plaintiff also prayed for an injunction.   The court held that it was entitled to recover "the value of the ore, to be estimated as it lay in the bed, and not as it was after the defendants had increased its value by removing it."

In *United States* v. *Magoon*, 3 McLean, 171, the court instructed the jury " that the value of the ore after its separation from the mine was not the measure of damages, but the injury done to the soil; that the digging and carrying away by the same person is presumed to be a continuous act, and the lead ore removed must be considered in aggravation of the trespass upon the soil."

Mr. Sedgwick, in discussing this question (p. 273), says: "The principle to be extracted from these cases is, that in trespass, if the defendant has in good faith increased the value of the property, the plaintiff shall not have the benefit of his labor; and this appears to be the rule in this country." (See *Weymouth* v. *C. & N. W. R. Co.*, 17 Wis. 551; *Single* v. *Schneider*, 24 Id. 300; *Id.*, 30 Id. 570; *Winchester* v. *Craig*, 33 Mich. 207; *Folsom* v. *Apple River Log-driving Co.*, 41 Wis. 608.

*Forsyth* v. *Wells*, 41 Pa. St., was an action of trover for coal mined upon and carried away from the land by mistake.   Plaintiff claimed, as in this case, that because the action was allowed for the coal as personal property, by necessary logical sequence, she was entitled to the value as

it lay in the pit after it had been mined. The court say: "It is apparent that this view would transfer to the plaintiff all the defendant's labor in mining the coal, and thus give her more than compensation for the injury done. Yet we admit the accuracy of the conclusion, if we may properly base our reasoning on the form rather than on the principle or purpose of the remedy. But this we cannot do; and especially we may not sacrifice the principle to the very form by which we are endeavoring to enforce it. Principles can never be realized without forms, and they are often inevitably embarrassed by unfitting ones; but still, the fact that the form is for the sake of the principles, and not the principle for the form, requires that the form shall serve, not rule, the principle, and must be adapted to its office. * * * When the taking and conversion are one act, or one continued series of acts, trespass is the most obvious and proper remedy; but the law allows the waiver of the taking, so that the party may sue in trover; and this is often convenient. * * * But when the law does not allow this departure from the strict form, it is not in order to enable the plaintiff, by his own choice of action, to increase his recovery beyond just compensation, but only to give him a more convenient form for recovering that much."

The court then states that in an action of trespass it prefers the rule adopted in *Wood* v. *Morewood* to that of *Martin* v. *Porter*, for the reason that the former gives just compensation for actual damage, while the latter does not, and adds: "Where there is no wrongful purpose or wrongful negligence in the defendant, compensation for the real injury done is the purpose of all remedies, and so long as we bear this in mind we shall have but little difficulty in managing the forms of actions so as to secure a fair result. If the defendant in this case was guilty of no intentional wrong, he ought not to have been charged with the value of the coal after he had been at the expense of mining it, but only with its value in place and with such other damage to the land as his mining may have caused. Such would manifestly be the measure in trespass for mesne profits." (7 Casey, 456.)

*Herdic* v. *Young*, 55 Pa. St. 177, was replevin for logs cut by defendant by mistake on plaintiff's land. The logs were driven to the boom by defendant and there replevied. The court say:    *    *    *    *    "As remarked by Lowrie, C. J., in *Morrison* v. *Robinson*, 7 Casey, 458, our natural sense of justice furnishes the ground and measure of compensation for injuries done by one man to the property of another, and demands adequate remedy to obtain it. In trespass for mesne profits, compensation was therefore held to be the measure of damage, and the defendant will be allowed for the value of permanent improvements erected by one whose title he has bought.    *    *    *    *    Such compensation merely would have been the standard in this case had ejectment or trespass *quare clausum fregit* been brought instead of replevin. The value of timber on the ground would have measured the mesne profits. Upon principle and analogy, it is unjust to give to the plaintiff the advantage of the labor and expense of the defendant's cutting and hauling the logs and driving them to the boom. Yet, if we confine our view to the condition of the property at the time of the replevy, instead of going back to the time of the taking, this would be the mere effect of a change in the form of action, and not of an alteration of the circumstances.    *    *    *    In case of inadvertent trespass, or one done under a *bona fide* but mistaken belief of right, this (the true standard of damages) would generally be the value of the logs at the boom (the place of replevy), less the cost of cutting, hauling and driving to the boom." (See, also, *Lykens Valley Coal Co.* v. *Dock*, 62 Pa. St. 232, and Coleman's Appeal, Id. 278.)

A careful examination of the authorities has convinced us that there is a growing inclination among all courts, where it can be done, to apply the only safe and just rule in actions for damages, whether *ex contractu* or *ex delicto*, and that is, to give the injured party as near compensation as the imperfections of human tribunals will permit. This is the aim, the ideal, of the law, and it is the duty of courts to come as near it as possible in practice; and although courts differ as to the method of ascertaining the actual loss,

as well as to what constitutes actual loss, still there is a refreshing unanimity of opinion that such loss only, when ascertained, ought to be compensated in the absence of fraud, malice or culpable negligence.

We are satisfied that the weight of authorities sustains the views of counsel for appellant upon this important question, and that they are sanctioned by every sense of reason and justice. The court erred in refusing to allow defendant to prove the necessary cost of mining the ore in question, and for this error the judgment is reversed.