The judgment of the district court must be affirmed.

*Affirmed.*

<hr/>

## St. Clair v. The Cash Gold Mining & Milling Company et al.

1. Practice—Nominal Damages.
Action for damages for trespass on plaintiff's mining claim and the taking of ore therefrom.   Evidence by the defense that the cost of extracting the ore so taken exceeded its value.   *Held,* under the circumstances of the case, that notwithstanding such evidence may have been uncontradicted, it was error to instruct the jury that the plaintiff could only recover nominal damages.

2. Measure of Damages in Trespass on Mining Claims.
The measure of damages for an innocent trespass by taking ore from another's mining claim is the value of the ore so taken less the actual cost of digging that particular ore from the particular vein, tramming it to the bottom of the shaft and hoisting it to the surface.   The expenses incurred by the trespasser in running levels, etc., to reach the vein, are not to be included as part of such costs.

3. SAME—BURDEN OF PROOF.

Whenever, in an action for damages for the wrongful extraction of ore from a mining claim, the defendant seeks to reduce the amount of recovery by evidence of the cost of extracting it, the burden of proof is upon him to show what he did and the value of what he took.

4. SAME.

The measure of damage against a trespasser who extracts ore from another's property, not as the result of an innocent mistake, but under circumstances showing that he had knowledge of the situation or charging him with such knowledge, is the value of the ore without deduction on account of expenses in mining it.

*Error to the District Court of Boulder County.*

Mr. L. C. ROCKWELL, for plaintiff in error.

Messrs. RIDDELL, STARKWEATHER & DIXON, for defendants in error.

BISSELL, J., delivered the opinion of the court.

The matters of fact exhibited by this record are free from complications; the questions of law thereby suggested are not of great difficulty, and the modern authorities of recognized force are in harmony about them. The errors apparent in the record proceed from an instruction which took from the jury the right to pass on questions of fact raised by the evidence, and the refusal of the court to advise them as to the law by which their deliberations were to be guided, and the admission of evidence which is neither relevant nor competent. The assignments do not suggest the errors which spring from the admission of the testimony, but the retrial which must follow the reversal renders the discussion of these matters both legitimate and essential. These suggestions outline the course which the opinion will pursue. The parties were the owners of mining claims situate in Boulder county. The locations were on a mountain which ran to the north and to the east, and were laid along its general course. The Bella, which was owned by the plaintiff in error, ran

north 22 degrees 12 minutes east. This claim was of the
usual size, being 1,500 feet long by 150 feet wide. About
200 feet from its southern end line it crossed the Cash vein
and ran in such a manner that one of the Bella side lines
projected from the southerly side line of the Cash about 200
feet from the end, so that the easterly side line of the Bella
crossed the Cash about 200 feet from the Bella southerly end
line, and its westerly side line crossed the Cash about 15
feet from the same end. The Cash vein, which was one of
the oldest locations on the hill, ran northerly 59 degrees and
22 minutes east, was 50 feet wide, and crossed the Bella at
the points already indicated. Both these claims were pat-
ented. No question arises in the case with reference to the
rights of the owners of the Bella and the Cash to what is
known as the " Cash vein," or to the right of the Cash own-
ers to follow their vein within the limits of the Bella location.
The Berkin location was unpatented, and laid across both
the Cash and the Bella, running north 41 degrees east, so
that it crossed both the easterly side line and the southerly
end line of the Bella very close to the southeast corner of
corner No. 1 of the Bella lode. The Berkin discovery adit,
as appears from the testimony, was immediately at the south-
erly end line of the Bella, and from its commencement reached
the Bella end line in about 12 feet. Whatever may be said
about these respective locations and the work that was done
is stated for the purpose of illustrating the present contro-
versy and exhibiting the basis on which the case was tried
and the contentions of the respective parties. All matters
of difference as between the Bella, the Berkin and the Cash
with respect to the rights of the Bella owners in the work-
ings, which will be hereafter referred to, are entirely elim-
inated and are of no consequence in the settlement of the
dispute. This comes from the fact that the Bella owners
brought an action in ejectment against the alleged trespass-
ers, got a verdict which settled their title, established their
right to the vein in which the work was done, and their right
to the ore which was taken out by the alleged trespassers, and

leaves only the naked question as to what the Bella people were entitled to recover, the true measure of their damages, and the rules by which the jury must be governed in the ascertainment of the facts. The general nature, course and direction of the work must be stated in order to show on what basis the court below proceeded, and to determine the true rule, as we believe it exists, by which the recovery must be measured. After the commencement of this discovery adit, and on the assertion of what was claimed to be a right to pursue a cross lode, they then ran a level from the discovery adit from the end line of the Bella northerly across the Cash and beyond the northerly side line of the Cash lode. Sometime in the prosecution of this work, the Cash owners became convinced that there might be some value in the Berkin location, and that it could be secured more advantageously and economically through their workings, which were between two and three hundred feet deep, than from any surface workings of the Berkin owners. The owners of the Berkin at that time, or shortly afterwards, sold the claim to the Cash owners and consolidated with it, so that the property was thereafter called the Cash-Berkin. When the Cash-Berkin consolidation pursued their explorations under ground, they connected the workings of the Cash vein proper, which had been prosecuted to a considerable depth in the Cash lode, by running levels from their main working shaft and cross-cuts from those levels to what was asserted to be the Berkin vein, and when they got into it took from that vein a very considerable quantity of ore. It is this trespass which is the basis of the present action. The plaintiff brought suit, and to maintain his case compelled the Cash-Berkin consolidation to produce the books which showed the extraction of ore during the time and within the periods complained of, in amount to a little upwards of $14,000. Evidence was offered which showed that during all the time the Cash-Berkin consolidation was prosecuting its work, both within the limits of their own rights on the Cash vein as well as the development of the particular vein which was claimed as the Berkin,

the ores were mixed and sold as belonging to one common property, and it was impossible from any records which were kept to sift out and determine what ore was taken from the Bella vein and what from the Cash.   The plaintiff, St. Clair, attempted to charge the company, under the doctrine in the *Little Pittsburg Con. Mining Company v. Little Chief Con. Mining Co.*, 11 Colo. 223, with all the ore extracted and its total value as shown by the books, except as the defendants might be able to reduce it by separating and establishing to the satisfaction of the jury what came from the one vein and what from the other.   The defendants recognized the force of the rule, assumed the burden of proof and attempted to meet its responsibility.   In order to do it they introduced evidence tending to show the cost, extent and value of the work done on the Cash property and on the Cash vein, and the extent and value of the work done on the Bella vein, and that the ore coming from both sources was about equal and that the expenses absorbed all the outcome.   In a certain sense and in a certain way possibly this was legitimate. It will be discussed farther on in the opinion.   The evidence offered showed the value and extent of the crosscuts to strike the Berkin vein and the necessity to prosecute this work of development from the Cash in order to get at the Berkin to work it.   The evidence tended to show the pay rolls and supply account during all this time and the general expenses incident to this method of development.   The evidence was objected to, but it was permitted to be offered.   The plaintiff introduced no evidence contradicting this testimony, for probably there was none accessible to him and he was compelled to accept the statements which the defendants made. On the conclusion of the evidence the plaintiff asked a good many instructions, which were all refused, some of which will be subsequently stated, and the court then, on the defendants' request, instructed the jury: " That from the uncontradicted evidence in this case and the law as applicable to such evidence, and to the case made by the pleadings, the defendants are entitled to abate the damages for the value

of the ore taken out of the Bella vein to the extent that they have incurred expenses in mining, extracting and milling said ore; and that the uncontradicted evidence shows that the cost of mining, milling and extracting said ore exceeded the value of the ores extracted. You are therefore instructed that the plaintiff can recover only nominal damages for the trespass alleged in the complaint. You will therefore return a verdict for the plaintiff and against the defendants and will fix the amount of damages at one dollar." This instruction was excepted to and to give it was undoubtedly error. By it the court took from the jury the entire question as to the cost and expenses of extraction, the value and character of the ore taken, and refused to submit to the jury the real basis of the controversy and on which the plaintiff was entitled to a finding. Whatever the jury may have concluded, and whether any other verdict than one for nominal damages would or would not have been sustained by the court, the defendants were entitled to have the jury find the amount of the ore taken, its value, and the cost of its extraction. Although the evidence of the defendants may have been entirely uncontradicted, it by no means follows that the jury would have allowed the totality of the expenses as exhibited by the proof offered. The instruction was equally faulty in another particular, because it did not advise the jury that the only expenses with which the defendants should be credited were the actual expense of taking the ore out of the Bella lode, providing they were entitled to limit the recovery by the extent of this cost. All the items of expense with reference to the running of drifts, levels, etc., to reach the Bella vein should not have been before the jury, unless it was for the sole purpose of showing that the cost of extraction equalled the extent of the value of the ore taken from the Cash lode. Whether this would be at all proper would depend very much upon circumstances, and it was not admissible for the purpose of limiting the plaintiff's recovery by this cost except in so far as it was an actual part of the legitimate expenses of taking the ore out of the Bella vein. In other words, the

plaintiff was entitled to recover the value of all the ore taken from the Bella, less only the actual cost of digging that particular ore out of that particular vein, tramming it to the bottom of the shaft and hoisting it to the surface. Whatever expense the Cash owners may have been to in running their levels, drifts and crosscuts to reach the Bella vein were no part of the cost which could be rightfully or legitimately added to the expense of extracting the Bella ore. When a trespasser enters on a vein to which he has no title and takes ore therefrom, he cannot charge the person whose property he has thus invaded with the expenses of the exploration incidental and necessary to finding it or reaching the vein which he spoliates by his trespass. It was therefore true this instruction could not have been legitimately given without the limitation that the only expenses with which the defendants could be credited were the actual expense of extracting from the Bella vein the ore for which they were sued. It is this evidence with reference to this matter which was objected to and admitted over the objection and respecting which there is no assignment of error. It has been referred to so that the court below on the subsequent trial will be guided by this opinion and therefrom determine the legitimacy of the evidence which the defendants may offer on this subject. By this instruction the court usurped the function of the jury, took the entire case away from their consideration, and for this action we have been unable to find any precedent in the books, nor has one been cited to us by the learned counsel who represent the defendants in error.

There are other equally fatal errors which will compel a retrial of the case. It is always true that the measure of damages for a trespass of this description is widely variant in two different classes of cases. In both of them the burden is with the defendant to show what he did, the value of what he took, and thereby limit the recovery. Our own supreme court has settled this proposition in the case hereinbefore referred to. It has been settled that a recovery on an innocent trespass is based on a totally different rule from one

which is not the result of an honest mistake, and is therefore a willful trespass within the ordinary legal acceptation of this term. In the first class of cases the defendants are undoubtedly compelled to pay only the value of the ore as it was in the mine, and, therefore, they can limit the recovery, *first*, by the value of what is taken ; *second*, by the cost of mining and extraction, tramming and hoisting to the surface or delivering it at the pit's mouth. This is the value of the stuff to the plaintiff, who would be compelled to stand these expenses if he had mined the ore himself. In this statement there has been no mention of the cost of reduction, for while this is usually a legitimate item of deduction, it is unimportant to the present discussion. On the other hand, if the defendants had taken out the ore, not as the result of an honest mistake or an honest intention, but under circumstances which showed that they had knowledge of the situation, or the circumstances were such as to legally charge them with this knowledge, they are entitled to no such deduction, and they may not reduce the amount of recovery by proving the cost of mining. Having been guilty of a willful trespass, they shall reap no benefit from their own wrong, and shall pay the value of the ore without credit for the labor incident to its extraction. This doctrine is too well settled to admit of controversy. *Waters v. Stevenson*, 13 Nev. 157 ; *Coal Creek M. & Mfg. Co. v. Moses*, 15 Lea, 415 ; *Wooden Ware Co. v. United States*, 106 U. S. 432 ; *Benson M. & S. Co. v. Alta M. & S. Co.*, 145 U. S. 428 ; *Jewitt, Receiver, et al. v. Erie Ry. Co.*, 30 N. J. Eq. 291 ; *Little Pittsburg M. Co. v. Little Chief Con. M. Co.*, *supra.*

To bring this issue clearly before the jury and to guide their deliberations, the plaintiff asked some instructions which charged the jury as to the respective rights of the parties, the burden of proof and the duty of the defendants to find out and ascertain where they were working and on what lode they were working and the good faith with which they did it, and charging the jury that unless they found that the defendants began the work under the honest belief

that they were working on their own ground, where they had a right to work, they were not entitled to reduce the recovery by the expenses of mining it. The plaintiff was undoubtedly entitled to instructions on this subject. The seventh instruction which the plaintiff requested put this question of good faith before the jury in an intelligible and tolerably satisfactory shape, and the plaintiff was entitled to have the jury instructed on that theory. The situation of the case warranted it. The entry by the Berkin owners across the end line of a patented claim and the pursuit of that development within its limits was not done in ignorance of the plaintiff's rights, and in doing that work the defendants took the chances of being called on to respond in damages for whatever they might take out without regard to the cost of extraction, unless they were entirely able to satisfy the jury that what they did was done in the utmost good faith and on a fairly well-founded belief of what they claimed were their rights. Locators of mining claims which are projected across patented property take all the risks incident to the pursuit of ore within the limits of that claim, and being found to be trespassers, must respond in damages to the highest limit of recovery unless they are able to satisfy the jury of the honesty of their purpose and the good faith with which they did their work. Manifestly, under such conditions as appear in the record, the plaintiff was entitled to have the jury told what the plaintiff's rights were under such circumstances, and the court was bound to submit to the jury the question of good faith, of honest purpose and fair intention, and tell the jury that unless they reached the conclusion the trespass was not a willful one, the whole evidence in regard to the cost of extraction was entirely foreign to their deliberations and should not be taken into account in determining what the plaintiff might recover.

The plaintiff was likewise entitled to an instruction which he asked with reference to the burden of proof respecting the value of the ore which came from the Bella. The defendants having taken the ore by trespass and mingled it

with the ore to which they were legitimately entitled, so that the plaintiff was entirely unable to separate and distinguish and estimate it, the burden was on them to show how much came from the Bella and how much came from the Cash to the satisfaction of the jury. Unless the defendants were able to satisfy the jury on this question, the plaintiff might recover the value of all the ore shown to have been taken out, and the plaintiff's recovery was limited only by his own evidence on this subject. The defendants undoubtedly had the right to show what work they did in the Cash vein and what ore they took out, so as to give the jury all the light possible respecting the extent and value of the ore which came from the Cash lode and the extent and value of the ore which came from the Bella. If from this evidence the jury were able to separate and determine the value of each, then the recovery might be limited to what they should conclude to be the extent and value of the ore taken from the Bella lode, less whatever legitimate expenses were properly chargeable as against that ore on the lines which are herein indicated. Not otherwise was the evidence respecting the ore taken from the Cash and the work done on it admissible or legitimate. The jury should be plainly told that the cost of the work done on the Cash vein was wholly unimportant and beside their consideration, except as it might aid them in determining therefrom, if they were able to, what ore came from the Cash lode, that to the extent of this value the plaintiff's recovery should be reduced.

For the manifest errors which the court committed in taking the case from the jury and in refusing to instruct them on essential matters, this case will be reversed and sent back for a new trial.

*Reversed.*